LIBA LINDMAN v. KANSAS CITY, Appellant.

In Banc, April 13, 1925.

1. **NEGLIGENCE: Joint Tortfeasors: When Verdict for One Does Not Excuse Others: Street Obstruction.** The owners of the lot upon which a building was being constructed, the contractor who without a permit from the city piled building material on the roadway of the abutting public street, the owner and driver of the automobile who recklessly ran down pedestrians forced into the street by the obstruction, and the city which with knowledge permitted the obstruction to be unreasonably created and maintained, were all

308 Mo. Sup.—11.

joint tortfeasors, and a verdict for the contractor in an action by the injured pedestrian cannot be considered, in an action for damages by the pedestrian against the city, to be an adjudication that the street was not unreasonably obstructed. Neither of the other joint tortfeasors was the agent or employee of the city, and a verdict in favor of any one of them did not excuse the city for its own negligence in permitting the obstruction to be unnecessarily created and maintained by them or any of them, although the negligence of all may have concurred to produce the injury to the pedestrian.

2. ————: City's Knowledge of Obstruction. Maintaining excavated earth and building materials on the sidewalk and driveway of a much traveled street for four weeks or longer is notice to the city of such obstruction, and sufficient notice to charge it with knowledge of its existence and unlawful character.

3. ————: Obstruction of Sidewalk: Subordinate Right. An abutting lot owner has the right to use the sidewalk and street for storing a reasonable amount of building material, but it is not an exclusive right; it is only an easement subordinate to the paramount right of the public to use either, and subject to reasonable control, and must be restricted to an amount which is reasonable and necessary for the purposes for which it is to be used.

4. ————: Duty of City: Violation of Ordinances: Reasonably Safe Streets. A municipality incurs no liability for injury resulting from its failure to exercise its governmental powers in the enforcement of its ordinances; but aside from its ordinances, and as an implication arising from the grant of power to it with respect to its streets, a city is bound to exercise ordinary care to keep them free from obstructions and in a reasonably safe condition for the primary use of travelers.

5. ————: Obstructing Street: Pedestrians: Common Law and Ordinance Liability. Common observation teaches that when a sidewalk in a populous city is destroyed or obstructed by building materials to be used on abutting lots, pedestrians, in order to avoid such obstructions, will walk out into the driveway of the street, and thereby expose themselves to the danger of being struck by passing motor vehicles; and such dangers, and the consequent injuries, should be anticipated by persons of common prudence, and hence the contractor, who creates the obstruction, and the city, whose duty it is to keep its streets reasonably safe for the use of pedestrians, and through its officers to discover unnecessary obstructions therein, are guilty of negligence at common law and must respond in damages to a pedestrian who, because of such obstructions, unnecessarily created and unduly maintained, stepped into the driveway of the street, and was struck by a recklessly

driven automobile; nor is such danger so obvious and glaring as to warn a pedestrian of ordinary prudence against using the driveway of the street under such circumstances. And ordinances requiring the contractor to obtain a permit from the city before beginning such obstruction, and requiring him to assume all liability resulting from a failure to comply with its requirements and those of other regulatory ordinances, are but expressive, in different language, of the applicable common law.

*Held*, by RAGLAND, J., dissenting, with whom GRAVES, C. J., and DAVID E. BLAIR, J., concur, that the obstruction in the street was only twenty-seven feet wide and ninety feet long; that there remained for the use of the public a roadway fifty feet wide, and a sidewalk twelve feet wide on the other side of the street; that the obstruction consisted of a concrete mixer and a small tool house in the street near the curb, and sand, gravel and cement deposited in the roadway, delivered daily in such quantities only as was sufficient to keep the men engaged in the concrete work employed, and at the time of the accident there was only enough of such material to run the workmen an hour; that a city is authorized to withdraw temporarily a portion or all of a street from public use, and the city, under these circumstances, could have expressly authorized the closing of the twenty-seven-foot space occupied by the obstruction, provided the work proceeded with expedition, as it did, and therefore it did not incur liability in permitting the contractor to close that space.

---

Citations to Headnotes: Headnote 1: **Negligence,** 29 Cyc. p. 487. Headnote 2: **Municipal Corporations,** 28 Cyc. p. 1498. Headnote 3: **Municipal Corporations,** 28 Cyc. p. 864. Headnote 4: **Municipal Corporations,** 28 Cyc. pp. 1289, 1341. Headnote 5: **Municipal Corporations,** 28 Cyc. pp. 1354, 1389.

Appeal from Jackson Circuit Court.—*Hon. O. A. Lucas,* Judge.

AFFIRMED.

*John B. Pew* and *John D. Wendorff* for appellant.

(1) The trial court committed error in overruling appellant's motion in arrest of judgment for the reason that on the whole record the judgment was erroneous, contradictory and self-destructive in character, and the verdict upon which the judgment was based was erro-

neous, contradictory and self-destructive in character, for the reason that the only cause of action, if any, alleged in respondent's petition against appellant, was founded on the allegations that appellant, was liable for having permitted defendant, Carroll, to place in the street an unreasonably great and excessive amount of building material and occupying an unnecessary amount of the street, by forcing plaintiff into the street and into a place of danger, where she was injured by an automobile driven in a negligent and reckless manner by defendant Smiley, and the jury by their verdict in favor of defendant, Carroll, found that there was not an excessive or unreasonable amount of material in the street and that that portion of the street so occupied was not unreasonable or excessive. McGinnis v. Railway, 200 Mo. 347; Baird v. Flour Mills Corporation, 203 Mo. App. 432; Vest v. Kresge, 213 S. W. 167; Whiteaker v. Railroad, 252 Mo. 438; Doremus v. Root, 23 Wash. 715; Railroad v. Jopes, 142 S. W. 18; Delaplain v. Kansas City, 109 Mo. App. 107; Polski v. St. Louis, 264 Mo. 258, 462; Hesselboch v. St. Louis, 179 Mo. 505; See also King v. Kaw-Mo. Wholesale Grocery Co., 188 Mo. App. 238; Stid v. Railroad Co., 211 Mo. 415; City of Cameron v. Picksley, 211 S. W. 98; State ex rel. Bond v. Fisher, 230 Mo. 325; Polski v. St. Louis, 264 Mo. 462; 23 Cyc. 835. The trial court erred in overruling the peremptory instruction in the nature of a demurrer to the evidence asked by appellant. (a) Kansas City was not guilty of negligence. It was an entirely proper and lawful use for appellant to permit defendant Carroll to make a temporary use of the street by depositing building material therein for use in the construction of the building which was being erected, and Kansas City was not negligent in so permitting the use of said street and in not removing the material and filling up the excavation and restoring the walk on the south side of said street, which fact was also shown by the verdict of the jury in favor of defendant, Martin J. Carroll. Dillon on Municipal Corporations (5 Ed.) sec. 1168; Downey v. Boston, 184 Mass. 20; Hesselbach v. St. Louis, 179 Mo. 505; Press v. Penny and

Lindman v. Kansas City.

Gentles, 242 Mo. 98; Gorman v. Ry. Co., 255 Mo. 483; Stephens v. Macon, 83 Mo. 345. (b) A municipality is not required to open the entire street and keep all of said street at all times in condition for travel. Marshall v. Kansas City, 249 S. W. 82; Eli v. St. Louis, 181 Mo. 723; Benton v. St. Louis, 217 Mo. 691; Walker v. Kansas City, 99 Mo. 674; Hunter v. Weston, 111 Mo. 176; Baldwin v. Springfield, 141 Mo. 205; Kossman v. St. Louis, 153 Mo. 293; Gorman v. Ry. Co., 255 Mo. 384.

*Sanford B. Ladd, Porter B. Godard, Achtenberg & Rosenberg* and *John G. Park* for respondent.

(1) The law of this case is in Shafir v. Sieben, 233 S. W. 419. (2) The city owed the public, including the plaintiff, the primary, non-delegable duty to exercise ordinary care to keep the sidewalk in a reasonably safe condition. Welsh v. St. Louis, 73 Mo. 74; Boyd v. Kansas City, 291 Mo. 643; Stifel v. St. Louis, 181 S. W. 582; Ford v. Kansas City, 181 Mo. 148; Vogelgesang v. St. Louis, 139 Mo. 127; Long v. Moon, 107 Mo. 334; Russell v. Columbia, 74 Mo. 490; Norton v. St. Louis, 97 Mo. 541; Shafir v. Sieben, 233 S. W. 423. (3) The city was negligent. Shafir v. Sieben, 233 S. W. 423; Boyd v. Kansas City, 291 Mo. 622; Gerdes v. Iron Co., 124 Mo. 355, 359. (4) The verdict in favor of Carroll does not absolve the city. (a) Such verdict is erroneous, and the product of erroneous instructions. (b) Such verdict could, in no event, conclude the issue between plaintiff and the city. Wiggin v. St. Louis, 135 Mo. 568; Kiefer v. St. Joseph, 243 S. W. 109; Donoho v. Vulcan Iron Works, 75 Mo. 405; West v. Kresge Co., 213 S. W. 167. (5) A municipality is not required to open an entire street, but when it does open and improve such street, or any part of it, for travel, it must thereafter exercise ordinary care to keep such improved portion in reasonably safe condition. Marshall v. Kansas City, 249 S. W. 85; Ely v. St. Louis, 181 Mo. 723; Benton v. St. Louis, 217 Mo. 687; Walker v. Kansas City, 99 Mo. 652. (6) The city's negligence was a proximate

cause of plaintiff's injury. Shafir v. Sieben, 233 S. W. 424; Daneschocky v. Sieben, 195 Mo. App. 478. (7) Plaintiff's first instruction proper. Adelman v. Altman, 209 Mo. App. 583.

WOODSON, J.—The plaintiff instituted this suit in the Circuit Court of Jackson County against the defendant to recover $80,000, damages for personal injuries sustained by her, through the alleged negligence of the defendant, Kansas City, and others named in the pleadings and evidence.

The case was tried before the court and jury, which resulted in a verdict and judgment in favor of the plaintiff for $27,500. After moving unsuccessfully for a new trial, the defendant duly appealed the cause to this court.

While the record in the case is voluminous, covering about 525 printed pages, yet the questions of fact and propositions of law presented for determination have, by the labor, skill and ability of learned counsel for the respective parties, been reduced to a comparatively limited scope. Counsel for each party have filed briefs, statements of facts, and assignment of errors, and while there is little, if any, substantial difference in their respective statements of the case, yet we have substantially adopted that of counsel for respondent for the sole reason that it is a little fuller and shows more clearly the issues presented by the pleadings, and the facts established by the evidence.

The injury complained of occurred on Fifteenth Street, near Troost Avenue, in Kansas City, by an automobile having been run at a high rate of speed upon and against the respondent, at the time and in the manner hereinafter to be stated. The allegation of the petition is as follows:

That Fifteenth Street running east and west is intersected by Troost Avenue running north and south; both largely traveled, and upon the roadway of Fifteenth Street before the ninth of January, 1916, automobiles frequently ran at high, reckless and dangerous rates of

speed, rendering the driveway thereof dangerous to pedestrians. That the Altmans were and for a long time had been owners and in possession of lots at the southeast corner of Troost Avenue and Fifteenth Street, having a frontage on the south side of Fifteenth Street of about 91¼ feet; that there had been immediately in front of said real estate a safe and commodious sidewalk; that some time before said day the Altmans began the construction of a large building on said real estate and they and defendant Carroll removed said sidewalk and dug away and excavated to a great depth all the ground between the property line and the curb upon which said sidewalk had been located, so that it was impossible for pedestrians to use as a way for travel the place where said sidewalk had been located; that before said day they did negligently place and maintain on the outside and immediately north of the curb a line of obstructions extending the whole length of the frontage, consisting of tool house, cement mixer, sand, rocks and lumber and other building material, the quantity of which was so unreasonably great and excessive as to constitute a wholly unnecessary obstruction of the street.

That there was and had been in force Ordinance No. 8499, approved May 26, 1911, which provided that no person should make any cuts or excavations in or under any street, sidewalk or public place for any purpose whatever, without a permit therefor being first obtained from the superintendent of street repairs; that the said excavation where the sidewalk had been was made without first having obtained any such permit.

That on said day there was in force Ordinance No. 5763, approved August 10, 1910, which provided that no person should deposit upon any portion of any street, sidewalk or public place, building material for any building being erected on abutting property so long as there should be room upon such property for such building material; that if there was not sufficient room upon the property for the deposit of such material, then upon application to the commissioner of street cleaning, a per-

mit might be granted. That the said two Altmans and the defendant Carroll had not obtained any such permit and were guilty of a violation of said ordinance.

Said excavation, tool house, mixer, broken rock, lumber and other material were unlawful obstructions in said sidewalk and in said Fifteenth Street and as such constituted a nuisance in a public highway.

That the said two Altmans and Carroll were also guilty of negligence in failing to provide a passageway on the south side of said building material, tool house and mixer for the use of pedestrians who desired to travel in front of said property; that by their failure to do so such pedestrians, including plaintiff, were forced to walk north of such building material, etc., so deposited, and were thereby unnecessarily exposed to the danger of being run over and injured by automobiles and other vehicles driven upon the south side of said Fifteenth Street. That the said two Altmans and Carroll were required by building permit issued January 6, 1916, and Ordinance No. 38919, approved March 9, 1908, to erect and maintain during their said occupancy of the street a way for the use of foot-passengers and violated said ordinance in that they negligently failed to erect or maintain any such way for foot-passengers, and that if they had provided such way, the plaintiff would not have been compelled to go out into the street to walk, but could have used such way with safety.

That Kansas City knew, or by the exercise of ordinary care might have known, of the existence of said excavation and of the presence of said tool house, mixer, etc., in said street, constituting such obstructions and a nuisance in the public highway, in time to have removed and abated the same before the injury to the plaintiff, and thus have prevented said injury to the plaintiff, but carelessly and negligently omitted so to do.

That for a long period immediately prior to such accident it was a common occurrence for automobiles to run on Fifteenth Street at high, reckless and dangerous rates of speed, rendering the driveway thereof dan-

gerous to pedestrians, and said two Altmans and Carroll, and Kansas City, knew of the existence of this custom of reckless driving, and that said excavation and building material would compel pedestrians to go around the same and walk in the street on the north side of said building material, where automobiles, traveling rapidly, would pass, and should have reasonably anticipated that collisions between pedestrians and automobiles would occur and persons be thereby injured.

That about two o'clock on the morning of January 9, 1916, while she and a number of her friends and acquaintances were returning to their homes from a social gathering, she and they traveled on the east side of said Troost Avenue until they reached Fifteenth Street; and it being their purpose to go east from that point on the south side of said Fifteenth Street, were prevented by reason of the excavation aforesaid, from walking east in that part of the street used for a sidewalk, and were therefore compelled by the fact of said excavation and the presence of said obstructions and building material in the street, heretofore mentioned, to go around the same in order to find a place to walk, and they therefore did go around said excavation and said obstructions and building material to the north side of said obstructions and building material, and walked easterly on the south side of the roadway of Fifteenth Street and on the north side of said obstructions and building material. While the plaintiff and her said friends and acquaintances were so walking along Fifteenth Street an automobile owned by the defendant Sieben and then operated by defendant Smiley, who was the agent and servant of defendant Sieben, and acting within the scope of his employment by defendant Sieben, was negligently and carelessly driven in an easterly direction along the south side of Fifteenth Street by the defendant Smiley at an excessive, high and dangerous rate of speed, to-wit, more than twenty-five miles per hour. That while said automobile was being so driven it ran against the plaintiff, walking on the street, as aforesaid, and threw her violently to the pave-

ment of the street and against some of the obstructions therein, hereinbefore mentioned, and in consequence quence whereof she received the following injuries, to-wit: (Then followed a description of them).

Plaintiff states that Fifteenth Street at the intersection of Troost Avenue, where the injury to plaintiff happened, was and long had been prior thereto a very populous and busy portion of the city and there was much travel on the street and sidewalk at that point.

Plaintiff states that the injuries received by her were the result of the concurrent carelessness and negligence of the said two Altmans and the defendant Carroll, Sieben, Smiley and Kansas City, in the manner and in the respects hereinbefore stated, all of which constituted the proximate cause of her injury.

In order to present a bird's-eye view of the charges of the petition the following re-capitulation of them is here stated:

1. The Altmans and Carroll violated Ordinance No. 8499 in excavating the sidewalk space without permit, in tearing up the long used sidewalk, in depositing building material in the street without permit in violation of Ordinance No. 5763, in creating and maintaining such unlawful obstructions, forcing pedestrians into the street, in failing to provide a passageway for pedestrians south of the building material, thereby exposing pedestrians to danger of collision with automobiles, and in failing to comply with provisions of Ordinance No. 38919 and the building permit requiring such passageway, when they knew of the custom of running automobiles at dangerous speed.

2. That Kansas City knew of all such conditions, and of the nuisance created thereby, in time to have removed and abated it before injury to plaintiff, and of the practice of running automobiles past this property at excessive speed, and that it was the primary duty of the city to keep its streets in a reasonably safe condition.

3. That Smiley carelessly ran Sieben's car at an excessive and unlawful rate of speed against and over plaintiff.

4. That the negligence of all the defendants concurred to produce said injury.

The verdict in favor of Carroll was accidental and inclusive and was produced by misleading and erroneous instructions given on the part of Carroll and numbered 17, 20, 21, 22, 23 and 24, objected to in plaintiff's appeal here, No. 24004.

There is no material dispute between counsel concerning the facts, which are as follows:

In September, 1909, Frank G. and Clem B. Altman acquired the real estate at the southeast corner of Troost Avenue and Fifteenth Street in Kansas City. There had been a sidewalk in front of the property along Fifteenth Street since 1886.

As shown by the application for building permit afterwards taken out, the site was 91¼ feet wide along Fifteenth Street and 161 feet and 8 inches deep along Troost Avenue. The Altmans desired to construct thereon a building to be seven stories high for picture show and office building purposes.

This was a busy corner, an intersection of two important street railways, the Troost Avenue and Fifteenth Street lines, at which passengers transferred. There were business houses, shops and stores north, south, east and west of the site. The traffic was heavy, especially in the daytime.

Fifteenth Street was one hundred feet wide, counsel for appellant says seventy-five feet, with a twelve-foot sidewalk on either side, and a double-track street-railway line about fifteen feet and four inches wide in the middle. The roadway on either side of the car tracks was, therefore, about thirty feet wide.

Over the south roadway, east-bound automobiles at night ran at terrific speeds. Witness Price testified that some went forty to fifty miles per hour; Land, thirty-five to forty miles per hour; Sadovsky, fifty miles per hour; Fisher, forty to fifty miles per hour; Genova, forty to fifty.

Police officers of the city visited the locality very frequently, several times per day.

On this site, about September, 1915, excavation was started by Norton Brothers working for the Altmans. Ordinance No. 5763 forbade the making of any cuts or excavations in any street or sidewalk without permit from the superintendent of repairs, but no such permit was taken out up to January 9, 1916. Without such permit the entire sidewalk was ripped up and torn out and the sidewalk space excavated to the depth of the basement, and Carroll admits that was the condition when he went on the work. He further testified that only the north fifty or sixty feet, under the theater, was excavated.

Other witnesses testify that that was the case, and that the pedestrian public, having no sidewalk provided for them, went out into the roadways in order to go around the excavated area, both on Fifteenth Street and Troost Avenue.

Many witnesses testify that the piling of building material in the south roadway, immediately north of the excavated sidewalk space, began two or three months prior to the injury, January 9, 1916. Others, said five or six weeks. Others about three weeks, but, taken most favorably for defendants, such storage of material must have begun shortly after the execution of the contract for the building of the structure, December 10, 1915.

In the street, between the excavated sidewalk space and the railway, Carroll put a tool house or office and large quantities of cement, sand, crushed rock and a concrete mixer. All witnesses measure it in feet from the south rail of the street-railway track. Some say it came within three or four feet; other six or eight feet.

The people traveling on the south side of the street continued to go around these obstacles.

Ordinance 38919, the "Building Code," prohibited the use of any portion of the street for the erection of a building upon abutting property until permit therefor had been obtained from the superintendent of buildings, and that "the person to whom such permit is granted shall also be required to erect and maintain during the said occupancy of the public streets, a way for the use of

foot passengers at such time and in such manner as the said superintendent may direct, and shall be responsible to the city for all injuries sustained in consequence of his neglect so to do.''

No permit of any kind was applied for until January 6, 1916, when the Altmans, as owners, and Carroll, as builder, made application to the superintendent of buildings for permission to erect the building in question, and thereby ''agreed to and bound myself (themselves) in consideration of the granting of said permit to construct said work in accordance with all the requirements of the ordinances of Kansas City . . . and . . . to the satisfaction of the superintendent of buildings, and . . . will . . . observe and conform in all respects to . . . ordinance No. 38919, approved March 9, 1908, and . . . be responsible for liabilities therein prescribed.''

The superintendent of buildings on said January 6, 1916, issued permit to erect a building to be used for picture show and office purposes, to be ninety-one feet front and 161 feet and eight inches deep, seven stories high, to be constructed of brick, stone and concrete, and, among other things, providing ''that in case it is necessary to remove all of said sidewalk a good and safe sidewalk shall be maintained at all times over the gutter or elsewhere, as the superintendent of buildings may direct and provide.'' (This was in heavy, bold, black type.) A rubber stamp imprint upon the permit gave notice that: ''a permit to use any part of the sidewalk or to make excavations therein must be procured from the commissioner of street cleaning.'' The foregoing was the only permit issued pertaining to the work.

No such way, nor any way, was provided by defendants of any of them.

Numerous police officers, testifying upon behalf of the city, admitted that they knew of all these conditions, and identified photographs depicting all these facts.

The evidence regarding the collision: On the evening of Saturday, January 8, 1916, there was a social party

at the house of a family named Leipold on Twenty-first Street between Troost and Forest avenues in Kansas City. It broke up about 12:30 to 1 o'clock on the morning of the 9th. Eleven of those attending left together. They traveled north on the east side of Troost Avenue, walking in couples. When the party reached the alley between Sixteenth and Fifteenth, the sidewalk was "off" and the young people had to go into the street. They turned the corner of Fifteenth Street, intending to go east to Forest Avenue, and the sidewalk was "off" there also, and material was lying in the street. The party was obliged to walk around it, intending to go back on the south side of Fifteenth Street, then to Forest to take one of the party home. The party walked as close to the material as possible. Lehr says the distance was only five or six feet; and Bessie Adelman says it was four to six feet.

At a spot east of Troost Avenue Sieben's car, driven by Smiley, came tearing up from the west, running twenty-five to thirty miles per hour and ran into the party, killing four and maiming practically every other member of the party. Plaintiff remembers nothing of the accident and neither does her sister. .

Sergeant Cummings was the police officer nearest the site. He says he heard the noise of the collision. It was about two a. m. He was on Troost Avenue, about 175 feet south of Fifteenth Street. The impact of the motor car against human flesh and bone, swathed in winter clothing, came crashing into his ears 200 feet or more away, and he rushed to help. He called for an ambulance, but soon found one ambulance would not care for the wounded and dead, and called for two.

Plaintiff was taken to the General (City) Hospital, where she was received at three a. m. January 9, 1916, and a record made that her age was then nineteen. Her diagnosis was fractured skull and partial paralysis; released to her father February 15, 1916. The evidence tended to show the character of her injuries were as follows:

Plaintiff, when injured, was nineteen years old, a perfect specimen of good health, robust, good complexion, vivacious, energetic, full of life, vision perfect, had never had a doctor, eyes absolutely straight. She was lively, very pretty, active socially, cheeks rosy, eyes bright and straight. She was a student at the Jewish Institute, earning her living working for Loose-Wiles Company. She could walk and run as well as anybody. She was sought after by the young men and particularly by one. Before injury she weighed about 125 pounds, and was cheerful and happy in disposition.

At the hospital there was first administered a sedative to ease the pain. She was wholly unconscious, in convulsions, her face in spasms and frothing at the mouth, with bloody mucus exuding. A stick was put in her mouth and ice packs were applied. The entire left side was paralyzed. After consultation of several medical men, an X-ray was taken. Dr. Binnie, a very famous surgeon, then on the staff, proposed lumbar punctures, by which a portion of the spinal fluid was withdrawn. The samples were bloody, indicating hemorrhage of the brain. In the afternoon plaintiff (still unconscious) was taken into the general operating room, an anaesthetic was administered, the head was shaved and an incision made in the area, which controls the movements and functions of the body. About four finger breadths above the right ear a circular cut to the bone was made, about five inches long. A lineal fracture in the skull was found three or four inches long. Dr. Binnie, who was operating, with a driver, or circular saw, like a gimlet with teeth on the edge, took out a piece of the skull, then with a mallet and chisel removed surrounding bone, until an elliptical opening about two inches in diameter, the short way, was obtained. The convulsions stopped after several days. When the bone was removed, the *dura mater,* or brain covering, was red and puffed out. After some time the convulsions diminished in violence, but the paralysis did not improve right away. When she regained her consciousness one of her eyelids dropped and she could not

open it. She was in the hospital, as stated, five or six weeks, and was taken home. She then began to notice things and could answer questions by nodding or shaking her head. Paralysis was still present. At the hospital she had two nurses, day and night. When she was taken home she had no nurse. After about a year the paralysis improved perceptibly and she began to articulate, speaking English and Jewish a little. She was in bed six months.

The right eye has never improved, the pupil has always been dilated, due to obstruction of the nerve. The left eye is in bad condition also. The paralysis has never entirely left the left side and has asserted itself on the other side. She has not the normal use of limbs on either side. She has an ataxic gait, indicating severe injury to the motor area in the left side of the brain.

Her mental operations are slow and only a fraction of what they should be, or were when she was hurt.

Her muscles seem atrophied, much weaker than they were before, due to paralysis.

She is not a fit subject for matrimony, could not carry a child nine months, would not survive the birth, could not train the child if born. Her weight before injury was 125; now not over 85. The injury is permanent. The percentage of vision in the right eye is five per cent of the left eye 20/30. She does all of her seeing with the left eye. These conditions are due to atrophy of the optic nerve.

Hearing is impaired. The organ of balance is greatly impaired.

She was formerly a strong girl, very capable in housework. She is now very weak and goes nowhere by herself, and when out an attendant must hold her arm.

There is impairment of the mentality. Dr. Skoog, who examined her on the part of the city, took the strength of arms and hands with a dynamometer. It should have measured on the left side 90 to 110. It did measure 50 to 60. On the right side it should be 100 to 120. It was actually 38 to 48.

From a bright, cheerful, beautiful girl, much sought after, she has been brought to conditions of permanent sickness, sorrow and distress, with intellect shattered, to be a burden upon her friends and an object of charity. Her right eye is motionless, her body and limbs very thin. She is not recognizable as the girl who lived before the injury. Of the twelve pairs of cranial nerves, six, to-wit, the third, fourth, fifth, sixth, seventh and eighth, are impaired. Dr. Skoog testified that she could not be married, because it is doubtful if she could comprehend the contract, and could not bear a child.

The verdict in her favor against the city, as before stated, for $27,500, is not objected to as excessive.

I. Counsel for appellant first insists that the trial court erred for the reason stated in this language:

"In overruling appellant Kansas City's **Joint** motion in arrest of judgment for the reason **Tortfeasors:** that on the whole record the judgment was **Verdict** **for One.** erroneous, contradictory and self-destructive in character, and the verdict upon which the judgment was based was erroneous, contradictory and self-destructive in character, for the reason that the only cause of action, if any, alleged in respondent's petition against Kansas City, was founded on the allegations that appellant Kansas City was liable for having permitted defendant Carroll to place in the street an unreasonably great and excessive amount of building material and occupying an unnecessary amount of the street by forcing plaintiff into the street and into a place of danger where she was injured by an automobile driven in a negligent and reckless manner by defendant Smiley, and the jury by their verdict in favor of defendant Carroll found that there was not an excessive or unreasonable amount of material in the street and that that portion of the street so occupied was not unreasonable or excessive." And we are cited in support of that proposition the following cases: McGinnis v. Railway, 200 Mo. 347; Stevick v. Railway, 39 Wash. l. c. 506; Baird v. Flour Mills Corp.,

308 Mo. Sup.—12.

203 Mo. App. 432; Vest v. Kresge, 213 S. W. 167; Whiteaker v. Railway, 252 Mo. 438; Doremus v. Root, 23 Wash. 715; Railway v. Jopes, 142 S. W. 18; Delaplain v. Kansas City, 109 Mo. App. 107, 113; Polski v. St. Louis, 264 Mo. 458; Hesselbach v. St. Louis, 179 Mo. 505, 523; King v. Kaw-Mo. Wholesale Grocery Co., 188 Mo. App. 1. c. 238; Stid v. Ry. Co., 211 Mo. 1. c. 415; City of Cameron v. Pixlee, 211 S. W. 97; State ex rel. Bond v. Fisher, 230 Mo. 325; 23 Cyc. 835.

In our opinion the case of McGinnis v. Railway, supra, and like cases cited by counsel are not in point, and have no application whatever to the facts of this case. In that case the petition charged and the evidence conclusively shows that the co-defendants of the railway company were agents and employees of the company, and it was contended that the company was liable because said agents and employees through their negligence and carelessness injured the plaintiff; the court discharged one of them and the jury found for the other, notwithstanding both of the agents and servants, whom it was charged committed the injury, were found not liable, they held the company liable. The court in that case correctly held that as a railroad company, a corporation, could only act through its agents and servants and as there was no pretense made that any other agents and servants of the company caused the injury complained of, therefore the verdict and judgment against the company could not stand; and that was upon the theory that if the agents and servants of the company did not commit the injury or were not negligent then, the company could not be held on account of their conduct. That ruling was clearly correct. But that is not this case.

Carroll, the Altmans, Sieben and Smiley were not the agents or employees of the city, but were joint tortfeasors and one or all of them might have caused the injury and those who did so, of course, would be liable; one of them here was the city, because it was bound to keep its sidewalks free from obstructions, and in a

reasonably safe condition for pedestrians to travel upon, which it did not do, as was decided by this court in the case of Shafir v. Sieben, 233 S. W. 419.

The Shafir-Sieben case, supra, was a suit to recover damages for personal injuries received and inflicted in this same catastrophe and at the same time. Division Two of this court and Court in Banc held the city and other defendants liable, for the reason that the city was liable for permitting building materials or other obstructions to be unnecessarily placed and allowed to remain on the sidewalk and thereby unlawfully excluded pedestrians therefrom, and thereby compelled the pedestrians to go out into the driveway of the street where the plaintiff was struck by an automobile, and the city was held liable therefor.

It was also held in that case that the placing of those materials there and keeping them there for the length of time mentioned in the evidence was sufficient to show notice or knowledge on the part of the city of their existence on the sidewalk.

While it is true the adjoining property owners have the right to use the sidewalk and streets for storage of a reasonable amount of building material, yet this is not an exclusive right, it is only an easement subordinate to the paramount rights of the public to use it, and subject to reasonable control, and must be limited to an amount which is reasonable and necessary for which it is to be used.

The petition charged, the evidence showed and the jury found that the material placed upon the sidewalk was not reasonable in quantity, nor necessary for the purposes for which it was to be used, and on that account the plaintiff was unlawfully forced from the sidewalk, into the street where she was struck and injured, which rendered the defendants liable therefor.

There is nothing new or extraordinary in this class of cases. They involve most ordinary common-law negligence. Ordinary common observation teaches us that when the sidewalk in a populous city is destroyed and

the place where it was located is obstructed by building or other materials, the pedestrians in order to pass around such materials will walk out into the driveway of the street, and thereby expose themselves to the dangers of being struck by passing vehicles. Any person of common knowledge and prudence should have anticipated this injury, and Mr. Carroll and the city through its officers and agents should be held liable for this negligence, and that, too, under the common law, and in my opinion the ordinance is only the declaration of the common law of negligence in different language. The following cases support the foregoing observations and while it was negligence on the part of the defendants to thus force pedestrians out into the driveway of the street, yet the danger incident thereto was not so obvious and glaring as to have prevented an ordinary prudent person from so using it. [Boyd v. Kansas City, 291 Mo. 622; Welsh v. St. Louis, 73 Mo. 71; Russell v. Columbia, 74 Mo. 480, 490; Norton v. St. Louis, 97 Mo. 537, 541.]

This common sense view of the matter was unquestionably the cause of the enactment of the ordinance.

Nor do I think that there is any merit in the contention that the ordinance was ineffective because the Superintendent of Buildings did not require the substituted sidewalk to be constructed in lieu of the original one which was removed, for the reason it was the duty of those who remove a sidewalk or obstruct it, to apply for and procure the permission of the superintendent before they do so, and they may be arrested and fined for so doing, if they do not get the permit.

If the law was otherwise, then the sidewalk could be destroyed or obstructed by any person, and the guilty one might go free if some city officer did not happen to see him commit the crime, in which he would be taking advantage of his own wrong, and thereby shield himself from all liability for all damages unlawfully and negligently inflicted upon his fellowman, just as is so unjustly attempted in this case.

The other cases cited by counsel for appellant announce practically the same rule of law as the McGinnis case does.

This point is ruled against the city.

II.   Counsel for appellant next insists that the court erred in not sustaining the motion for a new trial for the reason that the judgment and verdict were erroneous and contradictory as shown by the record, and counsel also insists that the trial court erred in not sustaining its motion for a judgment notwithstanding the verdict for the plaintiff.

Each of these assignments is based upon identically the same grounds upon which the first assignment of error was based. In our opinion these insistences are untenable for the reasons stated by us in paragraph one of this opinion.

III.   Counsel for appellant next insists that the court erred for not sustaining its demurrer to the respondent's evidence, because, it is contended, the city was not negligent.   To this we are unable to lend our concurrence.   The evidence in this case is fully as strong, if not stronger, in favor of the respondent's case, than it was in the Shafir-Sieben case, supra.   There the evidence was fully reviewed, and passed upon, and we held the evidence of negligence was ample to carry the case to the jury, and we are unable to see any good or useful purpose that would be served by considering this evidence again.

The city owned the public, including the plaintiff, the primary, non-delegable duty to exercise ordinary care to keep the sidewalk in a reasonably safe condition. [Welsh v. St. Louis, 73 Mo. 71, 74; Boyd v. Kansas City, 291 Mo. 622, 643; Stifel v. St. Louis, 181 S. W. 577, 582; Ford v. Kansas City, 181 Mo. 137, 148; Vogelgesang v. St. Louis, 139 Mo. 127, 135; Long v. Moon, 107 Mo. 334, 340; Russell v. Columbia, 74 Mo. 480, 490; Norton v. St. Louis, 97 Mo. 537, 541; Shafir v. Sieben, 233 S. W. 419, 423.]

*Sufficient Evidence.*

We are unable to see how the verdict in favor of Carroll absolves the city from its negligence. The verdict for him might have been the result of an erroneous instruction given in his favor which in no wise would affect a joint tortfeasor, who was liable. [Wiggin v. St. Louis, 135 Mo. 558; Kiefer v. St. Joseph, 243 S. W. 104.]

IV.  It is finally insisted that the court erred in giving for respondent instruction numbered 1.

We will treat this objection in the language of counsel for respondent, because it states the substance of the instruction, the objections made to it, which are italicized, and the answer of counsel to those objections.

Instruction. That instruction told the jury that if they should find from the evidence that "the Altmans themselves or through a contractor had removed said sidewalk . . . and excavated . . . the ground . . . so that it was impossible for pedestrians to use the same; . . . that . . . Carroll . . . had . . . maintained . . . immediately north of the curb . . . a tool house cement mixer, and sand and other building material, and . . . find that the same constituted an unnecessary and excessive obstruction of the street, *and that said Carroll made no provision for the safe passage of persons traveling on the south side of Fifteenth Street,* and that said tool house . . . and . . . material constituted a nuisance and obstruction . . . and . . . find that by reason thereof pedestrians were forced to walk north of said building material . . . and were thereby unnecessarily exposed to injury by automobiles . . . and . . . find that it was a common occurrence for automobiles to run on Fifteenth Street at . . . dangerous rates of speed . . . and . . . find that such running . . . rendered the driveway of Fifteenth Street dangerous to pedestrians, and that said excavations and . . . material *compelled* pedestrians to go around same, and . . . further find that . . .

Kansas City knew or by the exercise of ordinary care might have known said facts . . . long enough before . . . to have . . . caused the removal of said obstructions . . . by the exercise of ordinary care, but failed to do so . . . and find that Kansas City should have anticipated that collisions . . . would occur and was guilty of negligence in the foregoing respects and find that . . . plaintiff and her friends were . . . compelled to pass around said obstruction to find a place to walk and did go around said . . . obstructions and . . . north of said . . . material and . . . find that an automobile . . . was negligently . . . driven . . . easterly . . . at . . . twenty-five or more miles per hour and that same was . . . dangerous . . . and . . . further find that . . . it ran against plaintiff . . . and struck and injured her . . . and further find that plaintiff was in the exercise of ordinary care, *and that . . . Kansas City was in the above respects negligent and proximately caused plaintiff's injury* . . . you will find a verdict for plaintiff.''

The parts objected to are italicized.

The instruction required many other things, in addition to Carroll's failure to provide a place for pedestrians; so that the instruction was in no sense peremptory. The failure to provide the way for pedestrians was only one of the many elements necessary to be found. Had a safe way been provided, there should have been a peremptory instruction for defendants.

V.   Counsel for appellant assign two or three other subsidiary reasons for a reversal of the judgment, but from the view this court has always taken of this unfortunate catastrophe, we can neither justify or excuse the actionable negligence of the city. [Shafir v. Sieben, supra.]

The judgment is therefore affirmed.

PER CURIAM:—The foregoing opinion of Woodson, J., in Division One, is adopted as the opinion of

Court in Banc; *White, J.,* concurs; *Walker* and *Atwood, JJ.,* concur in result; *Ragland, J.,* dissents, in separate opinion in which *Graves, C. J.,* and *David E. Blair, J.,* concur.

RAGLAND, J., (dissenting).—This action, as against the defendant Kansas City, is based on the alleged negligence of the city in permitting the sidewalk, along the south side of Fifteenth Street adjacent to the lot owned by defendants Altman and on which they were erecting a large seven-story building, to be removed and the ground within the sidewalk space excavated, without requiring a footway to be built for the use of pedestrians on that side of the street, and in permitting the deposit of an unnecessary quantity of building material in the roadway of the street at the same place.

An ordinance of Kansas City prohibited the making of "any cuts or excavation in, through or under any street, sidewalk, alley or other public place . . . for any purpose without a permit therefor being first obtained from the superintendent of repairs." Another ordinance provided that "the person to whom such (building) permit is granted shall also be required to erect and maintain during the said occupancy (for building material) of the public streets, a way for the use of foot passengers at such time and in such manner as the said superintendent (of buildings) may direct." And a third ordinance prohibited the use of more than one-third of the roadway of a street for the piling or storing of building material. The sidewalk space above referred to was excavated without a permit therefor ever having been obtained. After the excavation had been made a building permit was issued to the defendant Carroll, who had the general contract for the construction of the building, but no direction was given him by the superintendent of buildings with reference to a footway and he did not provide one. There was some evidence in the case which tended to show that Carroll occupied slightly more than one-third of the roadway of the street with

his building material. These violations of the ordinances are pointed out merely for the purpose of eliminating them from further consideration. It is settled law in this State that a municipality incurs no liability for injury resulting from a failure on its part to exercise its governmental powers in the enforcement of its ordinances.

Aside from its ordinances, however, and as an implication arising from the grant of power to it with respect to its streets, Kansas City was bound to exercise ordinary care to keep them free from obstruction and in a reasonably safe condition for the primary use for which they were designed, that of travel. Whether there was any failure on its part to perform that duty, under the showing made, is the one question in the case which challenges consideration.

"It is not every obstruction in a street or highway that constitutes a nuisance *per se,* nor is every obstruction, irrespective of its character or purpose, illegal, although not sanctioned by express legislation or municipal authority. On the contrary, the right of the public to the free and unobstructed use of a street or way is subject to reasonable and necessary limitations, and to such incidental, temporary, or partial obstruction as manifest necessity may require." [13 R. C. L. 210.] Such obstructions are not invasions of the right of the public to the use of the highway or street, but are rather qualifications of or limitations upon it. [Clark v. Fry, 8 Ohio St. 358.] The right to maintain them is based upon necessity. That necessity, however, need not be absolute, but only reasonable. [Tolman v. Chicago, 240 Ill. 268.] "Subject to the limitations of necessity, reasonableness, and the public right, an abutting owner has the right temporarily to deposit in the street in front of his premises building materials required in the improvement of his property, even though the public using the street may to same extent be incommoded thereby." [13 R. C. L. 219; Hesselbach v. St. Louis, 179 Mo. 505, 523.]

The building being erected by the Altmans to front on Fifteenth Street covered their entire lot. When Carroll, the general contractor, came on the ground to begin construction, the excavation, including that of the sidewalk space in front, had been completed and barriers erected to prevent persons using the street from falling into the opening. Carroll's first work was to put in concrete retaining walls and footings for piers. He placed a concrete mixer and a small tool house in the street near the curb, and caused sand, gravel and cement to be deposited in the roadway. There was no other place in which to deposit it. He had it delivered daily in sufficient quantities to keep his force of men engaged in the concrete work employed. The work proceeded uninterruptedly from the time it was commenced until after the happening of the accident which caused plaintiff's injuries. At that time there was no building material in the street other than the sand, gravel and cement, and only enough of that to run the workmen an hour. The portion of the street occupied by the building material was about ninety feet in length, Altmans' frontage, and twenty-seven feet in width. It was withdrawn from public use by barricades upon which red lights were displayed at night. There remained for the use of the public a roadway approximately fifty feet in width and a sidewalk twelve feet wide on the other (north) side of the street. It is not pretended that this roadway and sidewalk were not amply sufficient to accommodate the travel which customarily passed over Fifteenth Street at this point. Pedestrians who had occasion to walk along the south side of the street were of course compelled to cross over to the north side in order to obtain access to a sidewalk, but the public suffered no other inconvenience of any consequence.

The permitting of the exclusion of the public from the use of the portion of the street above described is the only negligence with which Kansas City is charged. There are many situations, however, which will justify a municipality in temporarily withdrawing all or a por-

tion of a street from public use. It may be done for the purpose of repairing the street (Herbert v. County of Rockland, 64 Misc. (N. Y.) 353; 13 R. C. L. 223); or to permit adjacent owners to make improvments (Stephens v. Macon, 83 Mo. 345); or even for the purpose of exhibitions or public displays (3 Dillon on Municipal Corporation (5 Ed.) sec. 1174). It seems entirely clear therefore that Kansas City, under the circumstances disclosed by the record, could have expressly authorized the closing up of the portion of the street that was barricaded, while the building was in the process of construction, provided the work proceeded with expedition; and consequently it did not incur any liability in permitting it to be done.

For the reasons herein set forth I am unable to concur in the opinion which holds that the judgment as to the defendant Kansas City should be affirmed. *Graves, C. J.,* and *David E. Blair, J.,* concur in these views.