LIBA LINDMAN, Appellant, v. CLEM B. ALTMAN et al.; MARTIN J. CARROLL, Respondent.

In Banc, April 13, 1925.

should be erected, and the person to whom a permit was granted was under no duty to provide such a footway unless and until the superintendent required it. Therefore, where the sidewalk had been excavated by another before the contract for the erection of a building was let to the defendant contractor, and thereafter, after he had placed building material, consisting of gravel, sand and cement, a concrete mixer and a tool house, in the roadway of the street, thereby occupying one-third of its roadway, a permit was issued to him which recited that "in case it is necessary to remove all sidewalks, a good and safe sidewalk shall be maintained at all times, over the gutter or elsewhere, as the Superintendent of Buildings may direct," and no direction was given by the superintendent, at the time or subsequently, respecting the erection or maintenance of a footway in lieu of the sidewalk which had been removed, it was not the duty of the contractor, until directed by the superintendent, to erect and maintain a footway for foot-travelers, over the gutter or elsewhere, for he had had nothing to do with destroying the sidewalk and did not occupy any part of its excavated area with his building material, and he was not negligent in failing to construct the footway, and is not liable in damages, on account of such failure, to a pedestrian who, three days after the permit was granted, walked around the obstruction in the roadway and was there run down and badly injured by a recklessly driven automobile.

2. ——: ——: Building Material in Street. The contractor in erecting a building on lots abutting on a street has the right to occupy so much of the street with his building material as is reasonably necessary, subject to reasonable ordinance restrictions.

3. ——: ——: ——: More Than One-Third of Roadway: Causal Connection with Injury. Where the ordinance prohibited any person to use or occupy more than one-third of the roadway of a street for the piling or storing of building material, the contractor, who occupied a foot or a foot and a half more than one-third, is not liable in damages to a pedestrian who walked around the obstruction and was struck by a recklessly driven automobile, unless there is some evidence that his occupancy of the excess of a foot or a foot and a half in some way contributed to the pedestrian's injury. Some causal connection between the excessive occupancy and the injury must be shown.

4. ——: ——: What is Roadway: Construed Favorably to Public. The contractor, in the erection of a building upon lots abutting on a street, does not derive his right to deposit his building material in the roadway of the street, by grant from the city, but he has that right independently of ordinances; and therefore, where the

ordinance forbids him to occupy with his building material "more than one-third of the roadway," and the street is seventy-six feet wide between the curbs and a street railway occupies fifteen feet in the center, it cannot be held that the rule requiring ordinances to be construed most favorably to the public requires that "one-third of the roadway" be construed to mean one-third of that part of the roadway which lies between the curb and the street-car tracks.

5. ————: **Directed Verdict: Erroneous Instructions.** Where the court should have directed a verdict for defendant because of a total failure of the evidence to establish some causal connection between plaintiff's injury and defendant's alleged acts of negligence, and a verdict is returned for defendant, plaintiff was not prejudiced by the number of the instructions given relating to proximate cause.

---

Citations to Headnotes: Headnote 1: Municipal Corporations, 28 Cyc. pp. 876, 905. Headnote 2: Municipal Corporations, 28 Cyc. p. 864. Headnote 3: Municipal Corporations, 28 Cyc. p. 905. Headnote 4: Municipal Corporations, 28 Cyc. p. 389. Headnote 5: Appeal and Error, 4 C. J. sec. 3026.

Appeal from Jackson Circuit Court.—*Hon. O. A. Lucas,* Judge.

AFFIRMED.

*John I. Williamson, Sanford B. Ladd, Porter B. Godard, Achtenberg & Rosenberg* and *John G. Park* for plaintiff.

(1)   The sidewalk was a safety zone for plaintiff. Defendants are liable to plaintiff for her injury, which was caused by its destruction.   (a)   The law keeps pace with modern conditions.  Macomber v. Nichols, 34 Mich. 212; Towle v. Morse, 103 Me. 250; People ex rel. v. Field, 266 Ill. 609.   The automobile is a new and deadly peril. Berry on Automobiles (4 Ed.) Preface; Ex parte Kneedler, 243 Mo. 641; Meenach v. Crawford, 187 S. W. 883. (b)   Sidewalks are safety zones for pedestrians.  Tuttle v. Briscoe Mfg. Co., 190 Mich. 22, 30, 1 A. L. R. 842, note.  They are for the exclusive use of pedestrians.  Oliver v. City of Kansas, 69 Mo. 83; Benton v. Louis, 217

Mo. 705; Woodson v. St. Railway, 224 Mo. 699.; 1 Elliott on Roads and Streets (3 Ed.) sec. 23; Huddy on Automobiles (7 Ed.) secs. 508 to 514. (c) City ordinances and the building permit prohibited excavations in the street, and required the preservation of the sidewalk or part of it. Ordinance 5763, sec. 581; Ordinance 5763, sec. 596. So, also, does the common law. Shafir v. Sieben, 233 S. W. 423. (2) The destruction of the sidewalk, the excavation of the sidewalk space, the failure of the defendants to provide a temporary way for pedestrians and Carroll's occupancy of an excessive portion of the roadway created a condition forbidden by law. His permit was invalidated, and he became liable as a trespasser. (a) The ordinance and building permit provisions must be construed more favorably to the public, and more strictly against Carroll. 3 Dillon on Mun. Corp. (5 Ed.) pp. 1782, 1783; 2 McQuillin on Mun. Corp. sec. 811; Turnpike Co. v. Illinois, 96 U. S. 67; Oreg. Ry. v. Oregonian Ry., 130 U. S. 26.; Coosaw Min. Co. v. So. Co., 144 U. S. 550, 561; 36 Cyc. 1177; Stack v. Baking Co., 283 Mo. 396.; Jersey City v. Railroad, 40 N. J. Eq. 417.; Newark v. Railroad, 42 N. J. Eq. 196; Stormfeldt v. Turnpike Co., 13 Pa. St. 555; Com. v. Railroad, 27 Pa. St. 355. (b) Language identical to the permit has been construed to require immediate action by the person in possession of the property. 29 Cyc. 439; Willy v. Mullidy, 78 N. Y. 310, 34 Am. Rep. 536; McRieard v. Flint, 114 N. Y. 224; Adams v. Ayer, 192 Ill. 601, 614; Rose v. King, 49 Oh. St. 213, 15 L. R. A. 160. (c) It was the duty of the grantee of the permit to restore the highway to its prior condition. Moundsville v. Railroad, 37 W. Va. 92, 20 L. R. A. 161. (3) Since defendant Carroll failed to comply with the terms of his grant, he lost all his rights, and his occupancy of the street was wholly unlawful. 26 Am. & Eng. Ency. Law (2 Ed.) 691; Com. v. Railroad, 2 Gray (Mass.) 54; Com. v. Railway, 27 Pa. St. 339, 12 R. C. L. 173; 2 Elliott on Roads & Streets (3 Ed.) secs. 833, 834. (4) The excavation of the entire sidewalk space without permit, and Car-

roll's taking possession of that space without providing adequate ways for pedestrians, constituted a nuisance for which Carroll is liable.   (a)   The universal rule is that one who obstructs, maintains an obstruction or continues possession of an obstruction creates and continues a nuisance, for which he is liable to anyone specially injured thereby.   2 Shearm. & Redf. on Neg. (3 Ed.) sec. 365; 2 Elliott, Roads & Streets (3 Ed.) secs. 827, 833; 3 Dillon on Mun. Corp. (5 Ed.) secs. 1128, 1130, 1172, 1725; State ex rel. v. Powder Mfg. Co., 259 Mo. 254, 278. (b)   Carroll became liable for such nuisance from the time of his taking possession.   Grogan v. Foundry Co., 87 Mo. 321; Tate v. Railway, 64 Mo. 149; Dickson v. Railway, 71 Mo. 575; Pinney v. Berry, 61 Mo. 359; Silver v. Railway, 101 Mo. 91; Joyce on Nuisances, sec. 457.   (5)   The law of this case is Shafir v. Sieben, 233 S. W. 419.   (a)   These facts were adjudicated.   State v. Evertz, 190 S. W. 288; State v. Baird, 195 S. W. 1013. (b)   Where Court in Banc unholds a petition, such holding adjudicates those facts, if proven. Albers v. St. Louis, 233 S. W. 210, 211. (c) The circuit court judgment cannot be reversed because it followed the last authority. Booth v. Scott, 240 S. W. 218; State ex rel. v. Lamb, 232 S. W. 985; Coleman v. Ins. Co., 233 S. W. 188; State ex rel. v. Pub. Serv. Com., 275 Mo. 112; Bagnell Lbr. Co. v. Railroad, 250 Mo. 514, 520; Mahaney v. Railway, 254 S. W. 20; Frick v. Ins. Co., 233 S. W. 643; Lewis v. Barnes, 220 S. W. 487; McMenemy v. Kempelmann, 217 S. W. 99; Thompson v. Pennell, 199 S. W. 1011; Barrett v. Stoddard Co., 272 Mo. 129; Meyer v. Bobb, 184 Mo. 105.   (6)   Carroll had room on the site inside the property lines for the storage of building material.   Additional expense incurred in complying with the law is no excuse for violating it.   Natl. Waterworks Co. v. City of Kansas, 28 Fed. 921; C. B. & Q. R. Co. v. Illinois, 200 U. S. 561, 50 L. Ed. 596.   (7)   The right of the public was paramount to the right of Carroll.   Shafir v. Sieben, 233 S. W. 423; 13 R. C. L. 214, 215.   (8)   The liability of Carroll to plaintiff does not depend upon her proving

that the excess of the deposit of building material in the roadway caused the injury.   Authorities under Point 3.

*McCune, Caldwell & Downing* for respondent.

(1)   Ordinance 5763, sec. 596, has never been relied on as requiring the contractor to erect a temporary walkway.   (2)   Such claim has always been based on Ordinance 38919, sec. 217.   (3)   Ordinance 5763, sec. 596, does not amend or even refer to Ordinance 38919. They are and have always been treated by plaintiff as entirely independent.   (4)   Ordinance 5763 does not in fact require or refer to temporary walkway.   (5)   Ordinance 38919 did not under facts of the case require temporary walkway.   (6)   There was no room on lot to store building material, because the whole lot was excavated.

RAGLAND, J.—This is an action for personal injuries caused, as it is alleged, by the concurring negligence of those who obstructed, and permitted to be obstructed, a public street in Kansas City and the driver of an automobile which ran against plaintiff while walking in such street.

The *locus in quo* was the south side of Fifteenth Street, which runs east and west, immediately east of Troost Avenue, which runs north and south.   The width of Fifteenth Street from curb to curb was seventy-six feet; a double-track street railway fifteen feet in width occupied the center, leaving a space of thirty and a half feet from the outer rail on each side to the curb; there was a twelve-foot sidewalk along the north side of the street, and there had been a walk of the same width along the south side.   There was also a double-track street railway along Troost Avenue.   The intersection of Troost and Fifteenth was a point of transfer.   It was in a busy portion of the city and during hours of business activity there was a considerable amount of both vehicular and pedestrian travel on both streets.   At night after ten

o'clock and when other traffic had disappeared automobiles frequently ran along Fifteenth Street at high rates of speed.

Defendants Altman owned a parcel of ground at the southeast corner of Troost Avenue and Fifteenth Street. It had a frontage of about ninety feet on the south side of Fifteenth Street. Some time during the fall of 1915 they began the construction of a seven-story brick-and-stone building of such dimensions as to cover the entire tract of ground owned by them. The contract for the excavation was separately let to Norton Brothers, who are not parties to this record. This work they did sometime during the months of September, October and November, 1915. The precise date of the commencement and completion of the excavation was not shown. But in any event the excavation, which embraced the entire building site and the sidewalk space in front, was completed on or before December 10, 1915, and barricaded next to the street. On that date the general contract for the construction of the building was let to the defendant Carroll, and he at once began the work of putting in the concrete substructure—footings and retaining walls. The material for making the concrete: gravel, sand and cement, he deposited from time to time in Fifteenth Street adjacent to the building site. He also placed, and used there, a concrete mixer, and near the curb on the east end he built a small frame enclosure for the use of the architect and to house tools. A portion of the street so occupied, as well as the sidewalk space which had been excavated, was withdrawn from the use of the traveling public by means of a barricade at each end upon which a red light was displayed at night. The concrete construction work proceeded continously from the time it was commenced until January 9, 1916. When the work was suspended for the day, on January 8th, there was left on the street only enough material to employ the force of men at work on the job for approximately one hour at the beginning of the next working day. There was some conflict in the evidence as to how far it ex-

308 Mo. Sup.—13.

tended out into the street. The distance between it and the south rail of the track was variously estimated by plaintiff's witnesses at from three to eight feet.

Plaintiff pled and read in evidence parts of certain ordinances of Kansas City, in force January 9, 1916, and prior thereto, which contained among others these provisions:

"No person, firm or corporation shall use or occupy more than one-third of the roadway, nor more than, one-half of the sidewalk space or alley for the piling or storing of building material.

"No person, firm or corporation shall use any portion of a street for the erection or repair of a building upon land abutting thereon until a permit therefor shall have been obtained from the superintendent of Buildings.

No part of a street other than that so allotted shall be used for depositing materials for work to be done or for receiving rubbish arising from such work.

"When a permit is granted under the preceding section the portion of a street thereby allotted shall be protected by proper guards for such length of time as may be deemed necessary by the Superintendent of Buildings, and a lighted lantern or lanterns or some other proper or sufficient light shall be kept lighted from the beginning through the whole of every night during such occupation; the person to whom such permit is granted, shall also be required to erect and maintain during the said occupancy of the public streets, a way for the use of foot-passengers at such time and in such manner as the said superintendent may direct, and shall be responsible to the city for all injuries sustained in consequence of his neglect so to do."

On January 6, 1916, a building permit was issued to defendant Carroll which authorized him "to use for depositing building material not more than one-third of the roadway of the street, nor more than one-half of the sidewalk in front of said premises, provided that the gutter shall be bridged over and kept clear so as not to obstruct

in any way the flow of water, and that in case it is necessary to remove all sidewalks, a good and safe sidewalk shall be maintained at all times, over the gutter or elsewhere, as the Superintendent of Buildings may direct, and provided further that said party shall maintain at all times good and secure barricades around all openings or dangerous places, and shall provide and properly place red lights at each end of all obstructions of building materials in said streets, and keep the same burning brightly from sunset to sunrise every night, as provided by the laws of the city relating to public safety." No direction was given by the Superintendent of Buildings, either at the time the permit was issued or subsequently, with respect to the erection or maintenance of a footway in lieu of the sidewalk which had been removed, and none was ever constructed.

At about two o'clock in the morning of January 9, (Sunday), 1916, plaintiff in company with ten other young people, all of whom were on their way to their homes from attendance upon a social gathering, went north along the east side of Troost Avenue to Fifteenth Street and then turned west. As the sidewalk space and a portion of the roadway of the street were barricaded, they walked out into the roadway and thence east between the building material and the south rail of the street-car tracks. They were strung out, walking for the most in twos, and were talking and laughing as they went along. While they were so doing defendant Smiley, suddenly came upon them from the rear in an automobile, which he was driving at a rate of speed which exceeded twenty-five miles an hour, and ran into them, killing several and seriously maiming and crippling others, including plaintiff. As Smiley came across Troost Avenue from the west he was on the car tracks. Just before he reached the place where plaintiff and her companions were walking he turned south so as to bring them directly into the path of his car. No other vehicles were passing, the street was practically deserted. There was an arc light burning at the corner of Fifteenth Street and Troost

Avenue, from which the scene of the accident was well lighted. The automobile belonged to the defendant Sieben; he was not in the car, but Smiley was his chauffeur and Smiley was drunk.

This action was brought against the Altmans, the owners of the lot and the building under construction; Carroll, the general contractor; Sieben and Smiley, the owner and the driver respectively of the automobile; and Kansas City. The essential charges of negligence against the defendant Carroll were embodied in the following paragraphs of the petition:

" . . . that the said two Altmans and said defendant Martin J. Carroll before the 9th day of January, 1916, in the course of their work in and about the construction of said proposed building did negligently place and did on said 9th day of January, 1916, negligently maintain, on the outside and immediately north of the curb, in front of said real estate and in that part of Fifteenth Street used for travel by vehicles of different kinds, a line of obstructions extending the whole length of the frontage of said real estate, consisting of a tool house, cement mixer, large quantity of sand, and a large quantity of crushed, sharp and jagged rocks and lumber and other building material, the quantity of which was so unreasonably great and excessive as to constitute a wholly unnecessary obstruction of the street, all of which was building material intended to be used in and about said building, all of which obstructions extended from the curb north into Fifteenth Street. . . .

"Plaintiff further states that the said two Altmans and the defendant Carroll were also guilty of negligence in failing to provide a passageway on the south side of said building material, tool house and mixer, for the use of pedestrians who desired to travel in front of said property while said building was being erected; that by their failing to do so such pedestrians, including plaintiff, were forced to walk north of said building material, sand, pile of rocks, tool house and mixer, so deposited by said Altmans and Carroll in said street, and were thereby unnec-

essarily exposed to the danger of being run over and injured by automobiles and other vehicles driven upon the south side of said Fifteenth Street. Plaintiff further says that the said two Altmans and Carroll were required by *building permit issued January 6, 1916,* Section 217 of Ordinance No. 38919 of said Kansas City, approved March 9, 1908, which ever since then has been in force, and still is in force in said Kansas City, to erect and maintain during their occupancy of the street with such material aforesaïd, a way for the use of foot-passengers, and that they violated said provisions of said ordinance in that they negligently and carelessly failed to erect or maintain any such way for foot-passengers.''

It was further alleged that the specified negligence of defendant Carroll concurred with that of defendant Smiley in causing plaintiff's injuries.

On the trial plaintiff was compelled to take an involuntary nonsuit as to defendants Altman; the verdict of the jury was in her favor as to defendants Sieben, Smiley and Kansas City, but adverse as to defendant Carroll. On this appeal she seeks to have the judgment reversed and the cause remanded as to defendant Carroll.

Appellant's assignments of error all relate to the instructions that were given on behalf of defendant Carroll. These in effect acquitted Carroll of all responsibility for the obstruction of the sidewalk space, in that they directed the jury to find the issues in his favor, unless they found that he placed in the street an unreasonable or excessive amount of building material and that such act, if they so found, was a proximate cause of plaintiff's injury. The question of proximate cause, viewed from different angles, was submitted in some four or five instructions. The specific complaint is made that they overemphasized and gave undue prominence to that element of the case. They will be considered hereafter in detail, if necessary.

No fault can be found with the instructions for the elimination of negligence on the part of Carroll in respect to the obstruction of the sidewalk space. Carroll had

nothing to do with the destruction of the sidewalk. When he came on the premises to begin the construction of the building he found the sidewalk torn up and the ground under it excavated. Not only that, but barriers had been erected to prevent people using the street from falling into the opening. These he did not disturb. He did not create the obstruction, nor did he maintain it. The possession of the premises continued in the owners. He did at some time build retaining walls within the excavation made by the owners, but whether before or after the accident causing plaintiff's injury does not appear. As he had not created and was not maintaining the obstruction of the sidewalk space, Carroll was under no duty to build and maintain a footway to replace it, unless the building permit and the ordinance pursuant to which it was issued obligated him so to do. The ordinance provided that "the person to whom such permit is granted shall also be required to erect and maintain during the said occupancy of the public street a way for the use of foot-passengers at such times and in such manner as the said superintendent may direct." Appellant takes the position that this provision makes it the unconditional duty of the holder of a building permit to provide a footway at all times and under all circumstances, and that it is therefore incumbent upon him to take the initiative in obtaining from the Superintendent of Buildings the necessary directions with respect thereto. But the language does not reasonably bear that interpretation. It does not address itself to the holder of the permit, but to the Superintendent of Buildings; it does not say that the former shall erect and maintain a footway, but that *he shall be required to, at such time and in such manner as the superintendent may direct.* The ordinance evidently contemplates that there may be times during the initial stages in the construction of some buildings when it is impracticable to provide a safe footway along the street in their immediate proximity; and that in other instances the street outside of the occupied area may be sufficiently commodious to accommodate, in separate ways, both the

vehicular and pedestrian travel which customarily pass over, without danger or inconvenience to either. It therefore invests the Superintendent of Buildings with the authority to determine *when* a footway shall be built, as well as the manner in which it shall be built. Consequently the person to whom a building permit is granted is under no duty to provide such a way unless and until the Superintendent of Buildings "requires" it. The permit given Carroll provided "that in case it is necessary to remove all sidewalks a good and safe sidewalk shall be maintained at all times over the gutter or elsewhere, as the Superintendent of Buildings may direct." At the time it was issued the sidewalk had already been removed. Carroll was merely seeking permission to deposit building material in the roadway of the street; construed in the light of the facts and circumstances as they existed, the permit authorized Carroll to occupy not exceeding one-third of the roadway with his building material, on the condition that he construct a footway in such place as the Superintendent of Buildings might thereafter direct. This condition he could not perform until the Superintendent of Buildings had determined whether the walkway should be built "over the gutter, or elsewhere," and directed him accordingly, and no such direction was ever given him.

The only available place in which Carrroll could deposit the sand and gravel required for the concrete construction was in the street. He had a right therefore to so occupy the street adjacent to the premises on which he was erecting the building, to the extent that such occupancy was reasonably necessary, and subject to the ordinance provision limiting it to one-third of the roadway. If Carroll was guilty of any negligence in the placing of the building material in the street, it was in taking up slightly more than one-third of the roadway. The evidence does not disclose any other. The roadway was seventy-six feet wide; the distance from the curb on the south side of the street to the south rail of the street car tracks was thirty and a half feet. The sand and gravel in

this space according to some of plaintiff's witnesses came to within three feet of the rail, although the majority of them put it several feet further away. There was some evidence, therefore, that to the extent of a strip a foot or a foot and a half wide the material occupied more than one-third of the roadway.

Appellant argues that "roadway" as used in the ordinance must be held to mean that part of the roadway which lay between the curb and the street car tracks, on the ground that the grant must be construed most favorably to the public. But Carroll's right under the circumstances to deposit building material in the street did not come to him by grant; it existed independently of the ordinance, which merely prescribed the manner in which it should be exercised. [Searcy v. Noll Welty Lumber Co., 243 S. W. 318, 319.] As interpreted by appellant the ordinance was intended to so limit the right of an abutter in the use of the street as to in effect destroy that right. There is nothing in its language which warrants such a construction.

If it be true that the sand and gravel projected out into the roadway a foot and a half further than the ordinance permitted, what part did such unlawful projection play in bringing about plaintiff's injury? It is claimed that two acts concurred in inflictng the injury: (1) the putting of plaintiff into the street; and (2) the striking her with an automobile. [Shafir v. Sieben, 233 S. W. 419.] If the occupation by the building material of space in excess of that limited by the ordinance was instrumental in effecting either, it was because such occupation operated to place plaintiff in the path of the automobile. It may be that she would have walked a foot and a half further south from the street car tracks than she did, if the sand and gravel had been confined within the ordinance limit. But whether in that contingency plaintiff would have escaped injury is a matter of pure conjecture. There is not a fact or circumstance in evidence which shows, or tends to show, that if she had been a foot and a half further from the car tracks than she

was she would not have been struck. By reason of the failure of the evidence to establish a causal connection between the negligence of the defendant in occupying more of the roadway than the ordinance permitted and the injury sustained by plaintiff, the former was entitled to a directed verdict. Consequently appellant was not prejudiced by the number of instructions given relating to proximate cause.

In view of the conclusions reached the judgment of the circuit court as to the defendant Carroll should be affirmed. It is so ordered.

PER CURIAM:—The foregoing opinion of Ragland, J., in Division One, is adopted as the opinion of Court in Banc; *Graves, C. J., David E. Blair* and *Walker, JJ.,* concur; *White, Woodson* and *Atwood, JJ.,* dissent.