SAM B. STROTHER, Administrator of Estate of SARAH SHUB, v. KANSAS CITY, Appellant.—296 S. W. 795.

Court en Banc, April 8, 1927.

**1. SEPARATE APPEALS: Different Defendants: Consolidation: Hearing in Division: Transfer to Court en Banc.** A pedestrian was run over and killed while passing around obstructions on the sidewalk and extending into a public street, consisting of material for a building in process of construction. Her administrator brought an action for damages against the city, the contractor constructing the building, and the owners of the lot on which the building was being erected. At the close of plaintiff's case a demurrer to the evidence was sustained, and he took an involuntary nonsuit, and filed motion to set same aside, which was sustained, and thereupon defendants took separate appeals. In the division of this court to which the cases were assigned, on motion of the parties the cases were consolidated, but the consolidation order was ignored in the opinions, and the judgment against the contractor and the owners of the lot was reversed and the cause remanded with directions as to them, and no motion to transfer, and no order transferring, to Court en Banc, was made; but in the case against the city, for lack of a majority, there was no opinion, and the cause was transferred to Court en Banc; and in that condition of the record in the three cases the term ended. **Held,** that Court en Banc has for consideration only the case against the city.

**2. NEGLIGENCE: Of City Combining with Negligence of Others: Injury to Pedestrian by Automobile.** About one o'clock at night eleven young persons walked north on a public street. Arriving at a cross street running east and west they turned eastward. At the southeast corner a building was being erected. The sidewalk on the east-and-west street had been taken up, and barricaded to prevent passage on foot; a tool house was erected across the space, and building material, consisting of stone, sand and machinery, such as a concrete mixer, extended out into the street, which was seventy-six feet wide from curb to curb. Two parallel street-car tracks ran along the street, and it was thirty feet from the south curb to the south rail of the south track. The distance between the building material and the south rail was variously estimated by the witnesses as from a foot and a half to twelve feet. The building material extended east and west from 75 to 100 feet, and while the eleven pedestrians were walking eastward around the obstruction, somewhere between it and the railway tracks, an automobile, driven by a drunken man, coming from the west at a high rate of speed, dashed into the group, killing four of them, and seriously injuring several others. **Held,** that in view of the other facts in evidence the question of the city's negligence, in failing to keep a safe passage for pedestrians along the east-and-west street, was one for the jury, as was the question whether the negligence of the city in permitting the obstructions which forced the pedestrians into the street combined with the negligence of the driver of the automobile and with the negligence of the contractor who was constructing the buildings in failing to comply with reasonable regulations for the safety of pedestrians, caused the injury; and if so, the concurring acts of negligence authorize a verdict against the city.

**3. ————: Obstructions in Street: Construction of Buildings: Protection of Public.** Conceding the right to maintain obstructions in a public street for the purpose of constructing buildings on adjacent lots, and that such a temporary obstruction is a matter of necessity, a failure to comply with reasonable ordinance regulations for the safety of people who may wish to use

the street, either by the city or contractor who causes or maintains the obstruction, is negligence.

**4. NEGLIGENCE: Withdrawal of Street from Public Use: Barricade of Sidewalk: Red Lights.** A city has a right to withdraw from public use a sidewalk and any portion of a public street; but barricading the space occupied by the sidewalk is not withdrawing from public use the rest of the street, and the display of red lights on piles of sand and holes is only a warning to go around them and not a withdrawal of the rest of the street. A withdrawal of a street from public use implies a positive affirmative act, such as a clear notice put up at the next intersecting streets; otherwise, pedestrians, who use the street without objection for a considerable time after an obstruction is piled in it, use it by permission of the city.

Corpus Juris-Cyc. References: **Municipal Corporations,** 43 C. J., Section 1732, p. 954, n. 7; Section 1833, p. 1058, n. 21; Section 1840, p. 1066, n. 89; Section 1858, p. 1093, n. 73; Section 2043, p. 1279, n. 83 New.

Appeal from Jackson Circuit Court.—*Hon. James H. Austin,* Judge.

AFFIRMED.

*John T. Barker,* City Counselor, *W. H. Allen* and *John D. Wendorff* for appellant.

(1) The court committed error in sustaining respondent's motion to set aside the involuntary non-suit taken by him and in granting respondent a new trial for the reason that Kansas City had the lawful right to permit defendant Carroll to make a temporary use of the street by depositing building material therein for use in the construction of the building which was being erected at the southeast corner of 15th Street and Troost Avenue, as was being done in this case, and Kansas City was not liable in so permitting the use of said street and in not removing the material and filling up the excavation and restoring the walk on the south side of said street. Hunt v. St. Louis, 278 Mo. 213; Hesselbach v. St. Louis, 179 Mo. 505, 523; Press v. Penny & Gentles, 242 Mo. 98; Gorman v. Ry. Co., 255 Mo. 483; Stephens v. City of Macon, 83 Mo. 345; Searcy v. Noll-Welty Lumber Co., 243 S. W. 318; Lindman v. Altman, 271 S. W. 515; Dillon, Municipal Corporations (5 Ed.) sec. 1168; Lindman v. Kansas City, 217 S. W. 524. (2) Neither the building material nor the excavation of the sidewalk space was the proximate cause of deceased's injury. Henry v. St. Louis Co., 76 Mo. 288; Haley v. Transit Co., 179 Mo. 30; State ex rel. Lusk v. Ellison, 271 Mo. 463; Stanley v. Union Depot Co., 114 Mo. 606; Setter v. Maysville, 114 Ky. 60; De Camp v. Sioux City, 74 Iowa, 792; Storey v. New York, 29 App. Div. 316, 51 N. Y. Supp. 580; Memphis Co. v. Reeves, 10 Wall. 176; St. Louis Co. v. Commercial Co., 139 U. S. 223; Clark

v. Pacific Co., 39 Mo. 184; Moffatt Co. v. Union Pacific Co., 113 Mo. App. 544; Saxton v. Ry., 98 Mo. App. 494; Klockenbrink v. Railroad, 81 Mo. App. 351; Hull v. Transfer Co., 135 Mo. App. 119; Saxon v. Transfer Co., 145 Mo. App. 693; O'Hara v. Gas Light Co., 244 Mo. 395; Butz v. Kavanaugh, 137 Mo. 503; Ross v. Railroad, 113 Mo. App. 600; Maginnis v. Railroad, 182 Mo. App. 694; Foley v. McMahen, 114 Mo. App. 442; Strobeck v. Bren, 93 Minn. 428; Southwest Co. v. Webb, 116 Ga. 152; Nickey v. Steuder, 164 Ind. 189; Seith v. Commonwealth Elec. Co., 241 Ill. 331; Jones v. City of Fort Dodge, 185 Iowa, 600; Lambel v. City of Florence, 115 Kan. 111. (3) Deceased was guilty of contributory negligence which caused her injury in walking in the roadway on the south side of 15th Street, instead of going on the sidewalk on the north side of 15th Street between Troost Avenue and Forest Avenue. Rogers v. Teagarden Packing Co., 185 Mo. App. 99, 109; Smith v. Forrester-Nace Box Co., 193 Mo. 715, 737; Moore v. Railroad Co., 146 Mo. 572; 29 Cyc. 520; 2 Bailey on Personal Injuries, sec. 469, p. 1376; 3 Labatt's Master & Servant, sec. 1249, p. 3432.

*Phineas Rosenberg, Darius A. Brown* and *John G. Park* for respondent.

(1) Defendant was "bound to keep the streets and highways in a proper state of repair, free from obstructions, so that they will be reasonably safe for travel." Blake v. St. Louis, 40 Mo. 569; Smith v. St. Joseph, 45 Mo. 449; Bowie v. City of Kansas, 51 Mo. 454; Bassett v. St. Joseph, 53 Mo. 290; Hull v. City of Kansas, 54 Mo. 598; Oliver v. City of Kansas, 69 Mo. 79; Kiley v. City of Kansas, 69 Mo. 102; Beaudean v. Cape Girardeau, 71 Mo. 392; Welsh v. St. Louis, 73 Mo. 71; Russell v. Columbia, 74 Mo. 480; Loewer v. Sedalia, 77 Mo. 431; Jordan v. Hannibal, 87 Mo. 673; Carrington v. St. Louis, 89 Mo. 208; Brennan v. St. Louis, 92 Mo. 482; Norton v. St. Louis, 97 Mo. 537; Boyd v. Kansas City, 237 S. W. 1007; Russell v. Realty Co., 240 S. W. 147; 4 Dillon on Mun. Corp. (5 Ed.) sec. 1708; 13 R. C. L. 182, sec. 182; Shafir v. Sieben, 233 S. W. 423; Megson v. St. Louis, 264 S. W. 23; Shafir v. Carroll, 274 S. W. 755; Lindman v. Kansas City, 271 S. W. 516; Adelman v. Altman, 209 Mo. App. 583. The sidewalk was a safety zone for deceased. The city is liable for the killing which was caused by the destruction of such safety zone. 1 A. L. R. 842 (note); Tuttle v. Briscoe Mfg. Co., 190 Mich. 22, 30, 155 N. W. 724; Oliver v. City of Kansas, 69 Mo. 79; 1 Elliott on Roads & Streets (3 Ed.) sec. 23; Woodson v. St. Ry., 224 Mo. 685; Benton v. St. Louis, 217 Mo. 687; Rogles v. United Rys., 232 S. W. 93; Berry on Automobiles (4 Ed.) sec. 405; Huddy on Automobiles (7 Ed.) secs. 508 to 514; Shafir v. Carroll,

274 S. W. 756; Koerner v. Car Co., 209 Mo. 141; Shafir v. Sieben, 233 S. W. 423; Lindman v. Kansas City, 271 S. W. 522; Walker v. City of Kansas, 99 Mo. 647; Roe v. City of Kansas, 100 Mo. 190; Goins v. Moberly, 127 Mo. 116.   (2)   The negligence of Carroll in maintaining the obstructions in the sidewalk and the roadway, of the city in tolerating such conditions and the recklessness of Smiley, the driver of the car, concurred to produce this tragedy.   The misconduct of no one of them would have been injurious.   The combined misconduct of all was disastrous.   Shafir v. Sieben, 233 S. W. 423; Lindman v. Kansas City, 271 S. W. 516; Shafir v. Carroll, 274 S. W. 755; Daneschocky v. Sieben, 195 Mo. App. 470; Adelman v. Altman, 209 Mo. App. 583; Buckner v. Horse & Mule Co., 221 Mo. 700; Obermeyer v. Chair Co., 229 Mo. 97; Vogelgesang v. St. Louis, 139 Mo. 127; Hull v. City of Kansas, 54 Mo. 598; Brennan v. St. Louis, 92 Mo. 482; Bassett v. St. Joseph, 55 Mo. 290; Harrison v. El. Light Co., 195 Mo. 606; Benjamin v. St. Ry., 133 Mo. 274; Carr v. Supply Co., 239 S. W. 828.   (3)   Deceased was not, as a matter of law, guilty of contributory negligence.   Walker v. City of Kansas, 99 Mo. 647; Beaudean v. Cape Girardeau, 71 Mo. 392; Law v. St. Louis, 292 Mo. 384; McKenna v. Lynch, 233 S. W. 175; Evans v. Genl. Explos. Co., 293 Mo. 562; Smith v. St. Joseph, 45 Mo. 449; Loewer v. Sedalia, 77 Mo. 431; Barr v. City of Kansas, 105 Mo. 550; Maus v. Springfield, 101 Mo. 613.

WHITE, J.—Sarah Shub was run over and killed by an automobile, January 9, 1916, while passing around obstructions on the sidewalk and extending into the street in Kansas City.   The obstructions consisted of material for a building in process of construction on the adjacent lot.   The plaintiff, public administrator in charge of the estate of Sarah Shub, brought suit for damages against Kansas City, Martin Carroll, the contractor constructing the building, and Clem B. Altman and Frank G. Altman, owners of the ground upon which the building was being erected.

At the close of the evidence introduced by plaintiff, the defendants, February 21, 1919, asked an instruction in the nature of a demurrer to the evidence, which was given by the court.   The plaintiff thereupon took an involuntary nonsuit with leave.   He duly filed motion to set aside the involuntary nonsuit, which motion, June 23, 1923, was sustained, and the cause was reinstated upon the docket. Apparently, the delay in acting upon the motion was due to the pendency of several other cases in the circuit court and appellate courts, concerning the same matter.   Kansas City, September 7, 1923, filed an application for an appeal, and appeal was allowed to this court (Case No. 25522); September 8, 1923, the appeal of Martin Carroll was allowed to this court (Case No. 25946); and on the same

day, the appeal of Clem B. Altman and Frank G. Altman was allowed (Case No. 25521).

The cases in this court were first assigned to Division One, where, on a hearing, the judgment against Carroll and the Altmans was reversed and the cause remanded with directions as to them. As against the city, for lack of majority, there was no opinion, and the cause was transferred to Court en Banc. There was no motion to transfer, and no order transferring, the cause as to Carroll and the Altmans to Court en Banc. The term ended with the record in that condition. While the matter was in Division, on motion of the parties the cases were consolidated, but the order to that. effect was ignored by Division One in writing the opinions. Therefore, we have for consideration only Case No. 25522, against Kansas City.

About one o'clock A. M., January 9, 1916, Susan Shub and ten other young persons were returning on foot from a party in Kansas City, walking north on Troost Avenue, which runs north and south. They arrived at 15th Street, which runs east and west, and turned eastward. At the corner of 15th and Troost, a building was in process of erection. The sidewalks on the south side of 15th Street had been taken up, and barricaded to prevent passage on foot. A tool house was erected across the space, and building material consisting of stone, sand and machinery, such as a concrete mixer, etc. were extended from the curb out into the street. Fifteenth street was very wide—seventy-six feet from curb to curb. Two parallel street-car tracks ran along the street; it was thirty feet from the south curb to the south rail of the south track. The evidence is conflicting as to how close this building material extended to that south rail. It was variously estimated at from twelve feet to one and a half or two feet. These eleven persons turned to the east to walk around that building material which extended east and west, a distance of 75 or 100 feet, and while somewhere between that building material and the street railway tracks an automobile driven by a drunken man, coming from the west at a high rate of speed, dashed into the group, killing four of the number and seriously injured several others. Susan Shub was one of the killed.

The plaintiff seeks to hold the city liable for failure to keep the sidewalk, or a passage way, for pedestrians in safe condition for passage. He seeks to hold the contractor, Martin Carroll, because in violation of certain ordinances set out in the petition he failed to provide a temporary walk way across the place where the street was obstructed. He seeks to hold the Altmans, owners of the property, for failing to comply with the ordinance in that respect.

I. A number of cases arising out of this incident have already been in this court. In the reports of those cases the facts are more

fully set out than stated above. With respect the liability of the defendants there has been considerable division **Concurring Negli-** of judgment in this court.
**gent Acts.**          In one of the latest decisions, Lindman v. Kansas City, 308 Mo. 161, it was held that the evidence was sufficient to sustain an allegation of negligence on the part of the city in failing to keep a safe passage for pedestrians along the street at that point; that the combined negligence of the city in permitting the obstructions which forced pedestrians into the street with the negligence of the driver of the automobile, and of Carroll, caused the deaths and injury in the several cases. It was also held in case of Shafir v. Carroll, 309 Mo. 458, 274 S. W. 755, that the evidence showed that Carroll was liable for obstructing the street and sidewalk, and failure to comply with the ordinances mentioned. It was said in the Lindman case, by Judge WOODSON who wrote the opinion, at page 178, that the Altmans were also liable, but that statement is *obiter* since the case affected only Kansas City. The reasons for holding the city and Carroll, the contractor, liable have been so fully discussed in the other cases mentioned that it is unnecessary to consider further the points raised on that feature of the case. The Kansas City Court of Appeals in Adelman v. Altman, 209 Mo. App. 583, l. c. 598, held that the Altmans were not liable. The holding has been, therefore, by a majority of the court, that the city, by permitting the obstructions, thereby forcing pedestrians into the street, was guilty of negligence which, concurring with that of the driver of the automobile, produced the injury; that Carroll was liable as contractor for failing to comply with the ordinance which provides for the safety of pedestrians in such case. The authorities have been cited, quoted and reviewed at length before this court, and we adhere to the doctrine there laid down without further consideration of the proposition there considered.

II. Another element not previously considered enters into this case. It appears in an objection to the ruling mentioned above, well expressed in the dissenting opinion of Judge RAGLAND, in the Lindman case, supra, 308 Mo. l. c. 185-186. He held that the right of the public to a free and unobstructed street is subject to reasonable **Failure to Observe** limitations; that the right to maintain obstruc-
**Regulations.**          tions in the street for the purpose of making improvements on adjacent property is a matter of necessity, without which building and improvements could not go on without serious inconvenience. It may be conceded that such a necessity may exist, and that obstructions in the street, such as the evidence shows in this case, may be maintained by a city, or by a contractor erecting a building. It is not the existence of the obstruc-

tion that constituted the negligent act, but it is the failure to comply with reasonable regulations for the safety of people who might want to use the street. The contractor was under obligation by ordinance to provide a temporary and safe walk way. The city was under obligation in the same way to protect pedestrians from injury which would occur to them in passing along or around the obstructions. Of course, as suggested in said dissenting opinion (l. c. 185), the city was not liable in damages for failure to enforce its own ordinances. It is further suggested in Judge RAGLAND'S dissenting opinion, and emphasized at length in the brief's of appellants, that a municipal corporation had the right and authority to withdraw from public use any street or any portion of a street when necessary for the safety of people using the street, and when improvements are being made which require the street to be encumbered or obstructed, and that the occupancy of the sidewalk and a portion of the street was merely a withdrawal of that portion of the sidewalk or street from use. There is no doubt about the soundness of the legal proposition, that the city had a right to withdraw from public use the sidewalk and any portion or all of the street. The matter then is resolved into a question of fact: Did the city withdraw not only the sidewalk along the south side of 15th Street, but that part of the street where the injury occurred, from use by the public, especially pedestrians? All that is said of that in the said dissenting opinion (l. c. 186) is that there were barricades and red lights displayed. I cannot find that that much appears in this case. There is no definite evidence in the record showing *what* barricades were erected at that place. The only witness who testified in regard to it, with any degree of definiteness, was Grove L. Clawson, whose place of business was near the obstruction. He said that the sidewalk was barricaded *for a while*. It was first excavated and barricaded before the building material was dumped into the street. There is no evidence that the barricade extended into the drive way. Nor do I find any evidence in this record that red lights were placed there as a warning. Since that evidence appears to have been in other cases, very likely it will be produced in another trial. How does the placing of a barricade across the sidewalk constitute a withdrawal from public use of that side of a street? It means only that a pedestrian cannot continue along the sidewalk. There is nothing to warn him that there is unusual danger in passing into the street. And how can the placing of red lights be considered a withdrawal of the street from public use? These red lights might have been on the barricade across the sidewalk, or might have been on the sand piles in the street. That would not indicate that the street was withdrawn; it would indicate only that there was danger where the red light was. A red light might be

**Withdrawal from Public Use.**

316 Mo.—68.

placed upon a hole in the street. That would indicate that there was danger in running into that hole. It would not indicate that there was danger in going around it.

The red lantern in the pile of sand merely warned persons not to go into the sand but to go *around it.* And that is what Miss Shub and her companions did. Instead of warning her to keep off the street it directed her to take the part of the street she might travel.

If proper notice had been placed at the entrance of the block that the street at that point was closed for travel, the red lights on the sand pile would have been unnecessary.

Appellants have cited no authorities indicating what action a municipal corporation must take in order to withdraw any street or portion of it from public use. These obstructions occurred on 15th Street, right at the corner of Troost Avenue. It would have been easy for the city to have put up a notice at that point: "This Side of the Street Impassable;" or "Closed;" or, "Withdrawn From Use;" or, "Pedestrians Go to The North Side"—anything indicating that it was the intention of the city to withdraw from use of pedestrians that side of the street. Of course the way provided for pedestrians is the sidewalk, but they may use the street, and in this case did use it by permission of the city. The evidence not only shows the city did nothing to indicate a withdrawal, but permitted the constant use of that side of the street by pedestrians. It was shown that the sidewalk was digged up several weeks, at least two weeks, before the accident occurred. Some witnesses placed it along in the autumn before.

The evidence shows that during all the time after that until the fatal accident occurred, pedestrians passed around those obstructions in the street. Automobiles speeded along 15th Street. That was the point where policeman lay for and arrested speeders. Policemen were at that corner every day, not continuously but at some time during the day. So, the city had notice during all that time that pedestrians were passing continuously around the obstructions in the street on the south side of 15th Street. It was in fact a busy corner. A number of witnesses of defendant had business along 15th Street and Troost Avenue. So far as the evidence here shows, the city took no steps to prevent people from using that part of the street. They were in no way warned not to pass around the obstructions. In fact, they continued to do it, and it may be said they were invited to do it because the barricade and the red lights, if there were any, warned them only to avoid passing along where the sidewalk had been and over the building material.

This pile of building material is described as being about three feet high, and not quite so high towards the street car track. Two of the persons killed were picked up off the sand which was there,

indicating that the party was skirting the edge of the material as closely as they could conveniently walk. How can it be said that the city, after allowing this south side of the street to be used by pedestrians, around the obstructions without protest or objection or attempt to divert travel in another direction, withdrew that part from public use? We are not saying that the evidence is conclusive against the city in this respect. We say only that it was a question of fact whether that part of the street where Miss Shub was killed was withdrawn from pedestrian use.

We hold, therefore, that the trial court was right in sustaining the motion to set aside the involuntary nonsuit.

The judgment of the trial court, therefore, is affirmed. *Walker, C. J.,* and *Gantt* and *Atwood, JJ.,* concur; *Blair, Graves* and *Ragland, JJ.,* dissent.