JOHN H. STOLLHANS v. THE CITY OF ST. LOUIS, a Municipal Corporation, Appellant.—121 S. W. (2d) 808.

Division One, November 19, 1938.

*Edgar H. Wayman* and *Louis A. McKeown* for appellant.

*Eagleton, Waechter, Yost, Elam & Clark* for respondent.

HYDE, C.—This is an action for $30,000 damages for personal injuries. The jury's verdict was for defendant. The trial court granted plaintiff a new trial on the ground that it erred in giving defendant's Instruction No. 5. Defendant has appealed from this order.

The theory of plaintiff's petition was that defendant, by negligently permitting the sidewalks on Carter Avenue in St. Louis to be obstructed, compelled plaintiff to walk at night in the part of the street traveled by automobiles, where he was struck and injured by an automobile. Defendant contends that any error in instructions was immaterial because plaintiff was guilty of contributory negligence as a matter of law. For the purpose of ruling this contention, we state the facts shown by the evidence viewed most favorably to plaintiff. It was shown that Carter Avenue, at the place of plaintiff's injury, was a four-lane highway "used extensively for through traffic to Kingshighway;" that "the general mode of travel along there was fast;" and that "there was no side street there that they had to stop for." Carter Avenue had been paved in 1913 or 1914, "through a section that was rather sparsely settled and was rough country." About two years before plaintiff was injured "concrete sidewalks were placed on Carter Avenue west of Newstead;" and these "extended from Newstead to Taylor Avenue (about 1000 feet

west) on both sides of the street.'' About the same time the Christian Hospital was built at the northwest corner of Carter and Newstead. From this point, going west on Carter Avenue, ''there is a big hill and it comes down into a deep hollow.'' There was a deep cut with high embankments (''as high as forty feet'') on both sides of the street near the top of the hill just west of the hospital, and in rainy weather dirt washed down from these banks over the sidewalks.

At the time plaintiff was injured, he and William Timmerman were walking west (downgrade) on the north side of Carter Avenue. Plaintiff stated the conditions at that time, as follows:

''It a dark misty night, like a fog, and a real dark night. The streets were wet and it was misting at the time. . . . The mud from the bank on the north side had washed down over the sidewalk, completely covering it, and extended into the street about seven or eight feet, at places, south of the north curb. . . . The same condition existed on the south side of the street. . . . The mud on the sidewalk west of the point where we went into the street was two or three feet deep in places. . . . Where the mud was thickest, it was about two and a half or three feet at the curb.''

Timmerman testified:

''We walked on the north sidewalk of the street until we got to the end of the hospital property and then we had to detour and walk down the street. The sidewalk was literally covered with mud directly in back of the hospital property. . . . The mud was at a slant about like that (indicating an angle of about thirty-five or forty degrees above the horizontal). The same condition existed on the south side of the street.''

It was further shown that these conditions had existed for more than a year before plaintiff was injured, and that people frequently walked in the street there. Plaintiff was struck by a car driven by William Moser, traveling west in the north center lane of Carter Avenue. Timmerman was nearest the curb and plaintiff was about seven feet south of it. Just before plaintiff was struck, an automobile, with very bright lights, passed them going east. Moser said that he was blinded by the lights of this car and did not see plaintiff. Both Mr. and Mrs. Moser (who was riding with him) corroborated plaintiff as to the condition of the sidewalk and the weather conditions. (Defendant's evidence was that it was clear without precipitation.) Plaintiff and Timmerman were talking as they walked, and both said that they neither heard Moser's car approaching from the rear nor saw any light shine from its headlights. Plaintiff left the sidewalk about 150 feet west of Newstead and was struck after he had walked about 300 feet in the street, but before he had passed the obstructed part of the sidewalk. Plaintiff's testimony, on cross-

examination, is not clear as to whether or not he was paying any attention to traffic (because it is uncertain whether he intended an affirmative or negative answer to this question), but the interpretation most favorable to plaintiff would be that he meant to say he was. Timmerman said: ''In walking down the street there I did look behind me.'' He also said that they could see light reflected in front of them from the headlights of cars approaching from the rear, but did not see any light ahead before Moser's car struck plaintiff.

This court has held that, while a pedestrian, walking on the street, is ''required to be on the lookout for (automobiles) and in all cases is bound to exercise ordinary care for his own protection according to the circumstances,'' it is nevertheless also true ''that a pedestrian, equally with the operator of an automobile, has the right to be upon and use the traveled part of the highway instead of the sidewalk (at least unless ordinances or statutes provide otherwise); that it is not as a matter of law the duty of a pedestrian while walking along the traveled part of a highway to turn about constantly and repeatedly to observe the approach of possible vehicles from the rear (Blackwell v. Renwick, 21 Cal. App. 131, 131 Pac. 94); that, on the contrary, he may assume that the operator of an automobile will exercise ordinary (however, see Sec. 7775, R. S. 1929) care in keeping a lookout; that under ordinary conditions he will be discovered by such operator; and that the latter will, as he approaches, slow down and give an audible signal with his horn.'' [McKenna v. Lynch, 289 Mo. 16, 233 S. W. 175; see, also, Brown v. Conser Laundry Co. (Mo.), 246 S. W. 166; Ostermeier v. Kingman-St. Louis Implement Co., 255 Mo. 128, 164 S. W. 218; Dempsey v. Horton, 337 Mo. 379, 87 S. W. (2d) 621.] Considering that, according to plaintiff's evidence, there was no place to walk except in the street, and in view of the weather conditions and the fact that another automobile (going east) with very bright lights was approaching and passing by plaintiff during the same time that Moser's automobile (going west) was coming upon him from the rear, we cannot hold that plaintiff was guilty of contributory negligence as a matter of law. It is a reasonable inference that plaintiff and his companion were prevented by the other approaching car from either hearing Moser's automobile or seeing the reflection of its lights, and it does not appear how long it had been since either of them had looked back as was specifically shown in Dempsey v. Horton, supra.

Defendant also contends that the negligence of Moser was an intervening cause which prevented the city's failure to remove the obstruction from being the proximate cause of plaintiff's injury. This court has held that a city is liable when its negligence, by forcing a pedestrian at night into a much traveled street, becomes a concur-

rent proximate cause of an injury resulting from being run over by an automobile. [Shafir v. Sieben (Mo. en banc), 233 S. W. 419; Lindman v. Altman (en banc), 308 Mo. 187, 271 S. W. 512; Lindman v. Kansas City (en banc), 308 Mo. 161, 271 S. W. 516; Shafir v. Carroll (en banc), 309 Mo. 458, 274 S. W. 755; Strother v. Kansas City (en banc), 316 Mo. 1067, 296 S. W. 795.] Upon the authority of these cases, we hold that the issue of whether or not the city's negligence was a concurrent proximate cause of plaintiff's injury was a jury question in this case.

Instruction No. 5, which the trial court found to be erroneous, was, as follows:

"The Court instructs the jury that if you find and believe from the evidence that there was an obstruction in the sidewalk mentioned in the evidence, and even though you find that by reason of said obstruction said sidewalk was not in a reasonably safe condition for travel, and even though you may further find that plaintiff was injured at or near said obstruction, still if you find and believe from the evidence that said obstruction was not the proximate cause of or did not contribute to plaintiff's injury, if you find that he was injured, and that plaintiff's injury was due to some other cause, then your verdict must be for the defendant, the City of St. Louis."

The basis of plaintiff's case against the city was that its negligence was *a* concurrent cause which directly contributed with another cause to bring about plaintiff's injury. [See Fawkes v. National Refining Co., 341 Mo. 630, 108 S. W. (2d) 7; King v. Rieth, 341 Mo. 467, 108 S. W. (2d) 1; Cain v. Humes-Deal Co., 329 Mo. 1107, 49 S. W. (2d) 90; Carr v. St. Louis Auto Supply Co., 293 Mo. 562, 239 S. W. 827.] Plaintiff did not contend that the city's negligence was *the* only or sole *cause* of plaintiff's injury, or that plaintiff's injury was *not due* in part *to some other cause* than the obstruction.

Therefore, this instruction was not technically correct as applied to a concurrent negligence case and under the circumstances was certainly misleading. This is made apparent by leaving out the phrases beginning with "or" which are alternative instead of required findings. [Jones v. C., R. I. & P. Railroad Co., 341 Mo. 640, 108 S. W. (2d) 94; see, also, Gandy v. St. L.-S. F. Railroad Co., 329 Mo. 459, 44 S. W. (2d) 634.] Thus considering this instruction, the latter part thereof would read as follows: "And even though you further find (after finding the obstruction made the sidewalk unsafe for travel) that plaintiff was injured *at* . . . *said obstruction,* still if you find and believe from the evidence that said obstruction was not *the* proximate cause of . . . plaintiff's injury . . . *and that plaintiff's injury was due to some other cause,* then your verdict must be for the defendant." Of course, there was no injury from any contact with the obstruction. As worded, the jury

might reasonably believe that this instruction, as applied to the facts in this case, meant that even though plaintiff was injured *at* a point where *said obstruction* of the sidewalk forced him to stay in the street, nevertheless the city was not liable if plaintiff's injuries were due in any part to Moser's negligent driving of the automobile which actually inflicted the injury. Other courts have held similar language in a contributory negligence instruction to be prejudicially erroneous. [Wastl v. Montana Union Railroad Co. (Mont.), 61 Pac. 9; Rockwell v. Grand Trunk W. Railroad Co. (Mich.), 234 N. W. 159; see, also, Carr v. St. Louis Auto Supply Co., supra; Fawkes v. National Refining Co., supra; 45 C. J. 1348, sec. 922.] We hold that it was proper for the trial court to order a new trial.

The order is affirmed. *Ferguson* and *Bradley, CC.,* concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All the judges concur.