WINNIE LEE SCOTTEN v. THE METROPOLITAN LIFE INSURANCE COMPANY, INCORPORATED, Appellant.—81 S. W. (2d) 313.

Division Two, March 30, 1935.

*Hunter & Chamier* for appellants.

726

*Daniel C. Rogers* for respondent.

TIPTON, P. J.—This case comes to the writer on reassignment. This case was tried in the Circuit Court of Howard County and on appeal was taken to the Kansas City Court of Appeals, where the judgment of the circuit court was affirmed. A rehearing was granted and on the rehearing the judgment was again affirmed in an opinion written by CAMPBELL, Commissioner, but by a divided court. TRIMBLE, J., dissented, and upon his request the cause was certified to this court. These opinions will be found reported in 68 S. W. (2d) 60 et seq.

The pertinent facts are as follows: Scotten, the insured, signed an application for insurance April 15, 1919, for $5,000. The policy was later delivered, but the exact date is left uncertain by the record. The premium on the policy was to be paid quarterly, the first being paid with the application. The policy itself contained a clause that the company would not be liable until the policy had been delivered. In August, 1919, Scotten requested that the premiums be paid annually in place of quarterly "beginning with April 15, 1920." April 20, 1921, Scotten paid the premium by check. Upon the face of this check he wrote, "For insurance premium due 4/15/21." Yearly premiums were paid for the years 1922, 1923, 1924, 1925 and 1926, on the basis that April 15 was the due date, May 20, 1925, Scotten, on the theory that he had not paid his premium within the thirty-one-day grace period, signed an application for restoration of the policy, in which application it was stated that the "policy lapsed for the non-payment of the premium due April 15, 1925." This same procedure was followed in the year 1926. The application for restoration was signed July 9, 1926. The policy was restored and a loan of $614.10 was obtained by Scotten. On June 7, 1927, the company wrote Scotten a letter stating that he was permitting his policy to lapse and advising him that if he desired he could again be reinstated by paying the premium and signing health certificate. Scotten failed to sign the application for restoration as he had done in the years 1925 and 1926 and so far as the record disclosed paid no further attention to the matter. In November, 1927, he was notified that the company had lapsed his policy, and that it had placed it on a paid-up basis for $334. Thereafter Scotten at no time made any demand upon the company to reinstate his policy nor offered to pay the premium due. After his death, and three years after the policy had lapsed, the beneficiary claimed that the correct premium paying date was not April 15, but it was on the date of the delivery of the policy. She seeks to recover the full amount of the policy from the defendant upon the theory that the letter of June 7, 1927, breached the contract of insurance and thereby relieve Scotten of making any tender of premium after that date.

The defendant insists that, at the time the insured made his application, he paid the full first quarterly payment and the defendant

issued to him a "binding receipt" which provided that upon the approval of the application (which meant the acceptance of the risk and that a policy would be issued) the risk would be in effect as of April 15, 1919. The stub of this receipt was attached to plaintiff's Exhibit 2. This exhibit was the application. Other pertinent facts will be stated in the course of this opinion.

The defendant assigns as error the refusal of the trial court to give its instruction in the nature of a demurrer offered at the close of the case.

Plaintiff's theory of her case, as shown by the only instruction that directed a verdict in her favor, is that the letter of June 7, 1927, was an unlawful lapse of the policy. It was, therefore, incumbent upon the plaintiff to show that the policy was delivered at some time later than May 7, 1919. Assuming, without deciding, that the plaintiff's theory of the case is correct, we do not believe there was any substantial evidence that the policy was delivered at a date later than May 7, 1919.

Her evidence as to the date of delivery of the policy was as follows:

"Q. Do you know when the policy was delivered to Mr. Scotten? A. No, I don't.

"Q. Do you have any recollection as to how the policy came into his hands or into your home for the first time after it was issued in 1919? A. No, I don't.

"Q. Do you know that he took out the policy? A. Yes, sir, I know that. . . .

"Q. Do you know whether the policy came through the mail? A. No, I don't. . . .

"Q. Do you know on what date with reference to April 15th, your husband took the medical examination? A. No, I don't.

"Q. Do you know whether it was before or after the 15th of April? A. After. . . .

"THE COURT: Q. Mr. Rogers is asking if you know anything about the delivery of this policy—how and when? A. I don't know how and when, but I know that it was not immediately after it was written. . . . A. It was delivered after the application quite a while.

"THE COURT: You may state when the policy was delivered, according to your best knowledge. (Here objection was made.)

"Q. Go ahead and tell to the best of your knowledge when it was delivered. A. I don't know the exact date.

"Q. We are not asking for the exact date—just tell to the best of your knowledge when it was delivered. A. It was quite a while afterwards. . . .

"Q. According to your best judgment, how long was he waiting for the delivery of the policy after he made the application? A. I imagine it was a month.

"THE COURT: Q. Is that your best recollection? A. I *suppose* it is. . . .

"Q. Answer the question: To the best of your knowledge, how long, after the application was taken, was it when the policy was delivered to Mr. Scotten? A. It was at least a month, I am pretty sure.

"Re-cross-examination:

"Q. What date was it delivered? A. I don't remember the date—all I remember is him being worried about it.

"Q. You are basing that on the fact that your husband was worried? A. Yes, sir; because it didn't come and he thought it should.

"Q. You never did see the policy delivered? A. I suppose I saw the policy after it was delivered, but I didn't see it delivered.

"Q. You don't know when it was delivered, do you? A. No, I don't.

"MR. ROGERS: Q. But he waited quite a while for the policy? A. Yes, sir.".

The only other witness that testified as to the date the policy was delivered was witness, C. H. Tindal. He stated that he knew that the insured and he each took out a policy about the same time. He could not give the exact date when the policy was delivered, but approximated it was a month or so after it was written. He did not see it delivered. He was not there.

This was all the testimony concerning the delivery. It was all objected to as conclusions and mere guesses, and motions were repeatedly made to strike it out, but the same were overruled.

In Carpenter v. Wabash Ry. Co., 335 Mo. 130, l. c. 132, 71 S. W. (2d) 1071, l. c. 1073, we said:

"There is no need for stressing the fact that the Federal decisions (speaking of the Federal Employers' Liability Act) control upon this point since it is a well-settled law in Missouri that a verdict of a jury cannot stand unless based on substantial evidence. The Missouri rule is in harmony with the Federal rule."

In the case of Van Bibber v. Swift & Co., 228 S. W. 69, l. c. 76, 286 Mo. 317, we said:

"We do not regard the testimony of the plaintiff himself as of any probative value on this point, because, whatever he said in his direct examination touching the matter, was shown by his cross-examination either to be a mere guess on his part, or based on hearsay, and that he, in fact, knew nothing about it. Under such circumstances, his evidence on this point is not entitled to be regarded as of substantial force."

In the case at bar the plaintiff positively testified that she did not know when the policy was delivered; she did not see it delivered; she did not know if it came through the mail, nor did she know how it was

delivered. The first time she saw the policy, it was at her home and this was possibly a month after the application was made. How long the policy was in her home before she saw it she does not know. From her testimony it is as reasonable to suppose that it was delivered prior to May 7, 1919, as after that date.

Witness Tindal did not see it delivered, so his testimony must have been based on hearsay or a pure guess.

The policy was written April 24, 1919. Under the evidence it could have as easily been delivered prior to May 7, 1919, as afterwards. If delivered prior to May 7, then under the plaintiff's own theory of her case she could not recover. The verdict of the jury was based upon speculation and conjecture and not on substantial evidence. It cannot stand. [Watkins v. Bird-Sykes-Bunker Co., 322 Mo. 830, 16 S. W. (2d) 38; Keim v. Blackburn, 280 S. W. 1046; Lindman v. Altman, 271 S. W. 512, 308 Mo. 187.]

█ Moreover, we think the evidence conclusively shows that April 15th, was the annual premium payment date of the policy. It is a well-established rule of law that the construction placed upon a contract by the parties as evidence, by acts, conduct, or declarations indicating a mutual intent and understanding will be adopted by the courts where the language of the contract is ambiguous, or there is a reasonable doubt as to its meaning, but not where it is plain and unambiguous. [32 C. J., p. 1150, sec. 260; p. 1195, sec. 328; Lee v. Mo. State Life Ins. Co., 261 S. W. 83, 303 Mo. 492; State v. Christopher, 2 S. W. (2d) 621, 318 Mo. 225; Haseltine v. Farmers' Mutual Fire Ins. Co., 263 S. W. 810.]

The policy stated that the premiums were due April 15, July 15. October 15 and January 15. There was also a clause that the policy was effective on the date of delivery. There was a stub, of a binding receipt attached to the application which was plaintiff's Exhibit 2. This exhibit was introduced by plaintiff without reservations. There was uncontradicted evidence that the binding receipt made the effective date of the policy April 15, 1919. Certainly it cannot be said that on the face of the policy there is not a reasonable doubt as to the date the annual premium was due. Under these circumstances the policy must be construed as it was understood and acted upon by the insured and the insurer.

Scotten requested that the premiums be paid annually instead of quarterly "beginning April 15, 1920." The premium for 1920 was paid by check and upon its face was written: "For insurance premium due 4/15/21." For the years, 1922, 1923, 1924, 1925 and 1926, the premiums were paid on the basis that April 15th was the due date. On May 20, 1925, Scotten signed an application for restoration of the policy, in which application it was stated that the "policy lapsed for the non-payment of premium due April 15, 1925." If the annual premium was not due until May 7, or a later date as

plaintiff contends, it could not have lapsed on May 20, 1925, because that date would have been within the thirty-one-day grace period. This conclusively shows that the annual premium should have been paid on April 15th. From the conduct of both the insurer and the insured, the policy must be construed to the effect that the annual premium was due April 15.

For these reasons, we hold that the policy had lapsed when the letter of June 7, 1927, was written to the insured.

■ The policy provided that if a lapse occurred after three full years' premium had been paid that the insured shall within three months from the due date of premium in default, be entitled to one of the following options.

First. A cash surrender value.

Second. To have the insurance continued for a reduced amount of nonparticipating paid-up insurance, payable at the same time and under the same condition as this policy.

Third. To have the insurance continued for its original amount as term insurance.

It also provided: "If the owner shall not, within three months from due date of premium in default, surrender this policy to the Company at its Home Office for a cash surrender value or for endorsement for paid-up insurance or term insurance as provided in the above options, the policy shall be continued for a reduced amount of paid-up insurance as provided in the second option."

After the letter of June 7, 1927, the insured did nothing in reference to this policy. In November of that year the defendant continued the policy for a reduced amount of paid-up insurance as provided in the second option, and mailed a letter to the insured to that effect. The loan on the policy at the date it lapsed was $646.20, including the interest due.

As above stated, the theory under which the case was tried by the plaintiff is that the policy was wrongfully lapsed on June 7, 1927, and therefore, that relieved the insured of making any more payments on the policy. It was not tried on the theory that the reserve value of the policy was sufficient to keep the policy in force for the full amount until the insured's death, as was the case of Gooch v. Metropolitan Life Ins. Co., 333 Mo. 191, 61 S. W. (2d) 704. Nor would the evidence justify this theory. Of course, it goes without saying, that it must be tried on the same theory in this court that it was tried in the trial court. The defendant's instruction directing a verdict at the close of the case should have been given.

The judgment should be reversed and the cause remanded, with directions to render judgment in favor of plaintiff for the amount of paid-up insurance due. It is so ordered. All concur.