NELLIE F. LACY, RESPONDENT, v. AMERICAN CENTRAL LIFE INSURANCE CO., APPELLANT.—115 S. W. (2d) 193.

Kansas City Court of Appeals. January 31, 1938.

*Leslie M. Crouch* and *L. M. Crouch, Jr.,* for respondent.

*Sebree, Sebree & Shook* and *Robert A. Adams* for appellant.

REYNOLDS, J.—This is a suit on a policy of life insurance issued by the defendant on the life of one Roy Lacy for the sum of $2000, in which the insured's wife, the plaintiff, was named as beneficiary.

It was instituted in the Circuit Court of Cass County by petition filed on May 26, 1936, and was tried in said court before the judge thereof without a jury on November 23, 1936.

Upon the trial and at the conclusion of the plaintiff's evidence, the defendant demurred to the plaintiff's evidence and requested a judgment in favor of the defendant. The demurrer was overruled and the request refused. At the conclusion of the whole evidence, the defendant demurred to the whole evidence and requested a judgment in favor of the defendant. The demurrer was overruled, and the request denied.

The cause being thereupon submitted to the court on the date of trial, judgment was on such date rendered for the plaintiff, for $2000 with six per cent interest thereon from May 26, 1936, the date on which the petition was filed. From such judgment so rendered against it, the defendant, after an unsuccessful motion for a new trial, prosecutes this appeal.

The policy sued on was issued upon the written application of Roy Lacy, the insured therein, at the time a resident of Cass county, Missouri, on December 27, 1929, attached to and made a part of such policy.

It was issued and accepted subject to certain provisions set forth and annexed thereto, which were made a part of the contract. One of such provisions was to the effect that the entire contract between the parties should be the policy and the application.

Attached to the policy were nineteen coupons, numbered 2 to 20 inclusive, in the sum of $19 each, one of which matured each year (January 3, 1932, to January 3, 1950), which, as they matured, were made available to the insured to be used by him in part payment of premiums or to be drawn by the insured in cash or retained by the insured for payment upon presentation at any time with compound interest at four per cent. per annum for each full year after maturity. The only one material to the controversy here is coupon No. 2, which is as follows:

"After premium for policy year beginning Jan. 3, 1932 is paid, or to apply upon such premium or last instalment thereof and pro-

vided extended term insurance has not been granted under policy No. 204593 AMERICAN CENTRAL LIFE INSURANCE COMPANY will pay the insured thereunder or to the beneficiary in event of the death of the insured, NINETEEN and ......00/100 Dollars with 4% interest, compounded annually for each full year after date herein.''

The policy by its terms insured the life of Roy Lacy and agreed to pay the amount of insurance, $2000, for the consideration and under the conditions stated therein, to the plaintiff herein, Nellie F. Lacy, his wife, as beneficiary thereunder, immediately upon receipt of due proof of her interest and of the death of the said Roy Lacy, during the continuance of the policy.

It is recited in the policy that the consideration for the same should be the application therefor and a premium of $86.84 for the period terminating January 3, 1931, and a premium of like amount payable on said date and annually thereafter during the continuance of the policy; that each of the premiums might be paid in one sum or in semi-annual or quarterly installments of the amount, subject to the limitations provided in a paragraph on the second page thereof entitled ''Premium Payments.''

The policy contains ''Non-forfeiture Provisions'' upon default in the payment of premiums, after three years' premiums had been paid, and made provisions in case of default for cash value or for paid up or extended insurance, as follows:

''The insured may at the end of the third policy year or at any time thereafter during the period of thirty-one days following the due date of any unpaid premium or instalment thereof, either,

'' (a)—Surrender this policy at the Home Office of the Company for its Cash Value, which shall be at least equal to the sum which would otherwise be available for the purpose of Extended Term Insurance, payment of which Cash Value, may, at the option of the Company, be deferred for not to exceed ninety days after application therefor is made; or

'' (b)—Surrender this policy at the Home Office of the Company for a policy of Paid Up Insurance, payable at the same time and under the same conditions, except as to premium payments as this policy; or

'' (c)—Have the amount of insurance continued in force from the due date of the unpaid premium as Extended Term Insurance.

''If there be no indebtedness against this policy, the foregoing values shall be as indicated in the following table, the value shown in Columns 1, 2, and 3, of such table being increased by the value of any matured and unused coupons.

. . . . . .

''If the insured shall not surrender this policy to the Company at its Home Office for its Cash Value as provided in Option (a), above, or for a policy of Paid Up Insurance as provided in Option (b), the

amount of insurance will be continued in force as Extended Term Insurance as provided in Option (c)."

The table of values referred to in the foregoing provision is set out in the policy.

The policy, among other things, provides that all net values and net single premiums mentioned shall be based on the American Experience Table of Mortality, with interest at the rate of three and one-half per cent per annum; that the reserve under this policy shall be computed on the basis of the American Experience Table of Mortality with interest at the rate of three and one-half per cent per annum; that the first year's insurance under this policy is term insurance, purchased by the whole or part of the premium received during the first policy year, and the policy shall be valued according to its terms and the laws of the state of Indiana. It further provides: "The net value of each benefit in the Table is equal to the reserve less a surrender charge in no case in excess of two and one-half per centum of the amount of insurance under this policy. If fractional premiums in addition to premiums for whole years be paid, due allowances will be made in the above benefits. Values for each year after the twentieth, not shown in the Table, will be equivalent to the full reserve. After the end of the premium paying period, if no premium be in default, the cash value hereof will be available on surrender of this policy at the end of any policy year within thirty-one days thereafter."

Attached to the policy is the application for the insurance. Section 7 thereof is as follows:

"I desire policy dated (OLCO) and I agree that the policy years shall end on successive anniversaries of said date. I also agree that the insurance hereby applied for shall not take effect until the payment of the first premium or instalment thereof and the approval of this application by the Company."

Under Section 14 (under the heading, "For Home Office Endorsements Only"), the following is found: "The Date of policy in Section 7 is changed to read: 'Date of Approval.' "

Section 15 is as follows:

"I agree (a) that I will present myself promptly to an authorized examiner of the Company for examination, if required, and hereby relieve the Company of any responsibility for securing such examination; (b) that no statements, promises, representations, notices or information made or given by or to the person soliciting or taking this application, or by or to any other person, shall be binding on the American Central Life Insurance Company or in any manner or affect its rights unless same be reduced to writing and submitted to the company at its Home Office as a part of this application; —(d) that in case the Company should issue a policy different from that applied for herein or in case of apparent errors or omissions in this

application the Company is hereby authorized to amend it, by recording the change in Section 14, above and that my acceptance of any policy issued as a result of and containing a photographic copy of this application shall constitute a ratification by me of said application so changed or amended."

It appears from the record that the defendant is a corporation organized and existing under the laws of the State of Indiana and is duly authorized to do business as a life insurance company in the states of Indiana and Missouri and other states of the United States and that its principal office is in Indianapolis, Indiana.

It appears that, on December 27, 1929, the insured (Roy Lacy), a resident of Harrisonville, Missouri, made the application to the defendant for the issuance of the policy in question and that, at the time of making such application, he paid the first premium on said policy in the sum of $86.84; that the application therefor was approved by the company on January 3, 1930, and that the policy bore such date as the date of its issuance; and that the policy was delivered to the insured on January 8, 1930, in Harrisonville, Missouri, and accepted by him.

Section 8 of the application states that the application is for $2,000 insurance on "OLCO Plan" without "WPD," without "MID", and without "DI".

It also appears that Section 7 of the application was, before the approval of the application, changed by the defendant company by striking "OLCO" following the words, "I desire policy dated", and inserting at such place the words, "Date of Approval", and that such change was entered thereon as Section 14 of the application.

It further appears that three annual premiums were paid by the insured on the policy on January 3 for three successive years and default was made in the payment of the fourth; that the two coupons numbered 1 and 2 attached thereto had matured, the first on January 3, 1931, the second on January 3, 1932; that the first had been surrendered to the company, and the insured had received the benefit thereof; that the second remained attached to the policy; that the insured (Roy Lacy) died on March 15, 1936, at one A. M.; and that due proof of death was made in accordance with the requirements of the policy.

It appears that, on December 27, 1932, the insured, by letter, advised the defendant that he would be unable to pay the premium next falling due on the policy (which was for the year of 1933) and requested that the advantage of any extended insurance, if there was any, be given him. The defendant later advised the insured that extended insurance had been granted on the policy to March 10, 1936.

There is a statement in the application by the insured that he had settled for the policy applied for with the agent in the following

manner: $86.84 in cash for all of the first premium on condition that, if the risk was not assumed by the company, such sum so paid in cash should be returned in accordance with the provisions of the binding receipt which had been delivered to him by such agent, which he had read and accepted subject to the provisions thereof.

The defendant complains of the action of the trial court in the refusal of its requested instructions in the nature of demurrers to the evidence at the close of the plaintiff's evidence and again at the close of the whole case and complains that the court, upon the entire record, erred in finding for the plaintiff and rendering judgment for her rather than for the defendant.

The ultimate question in this case is whether or not the policy sued on was in force at the date of the death of the insured, on March 15, 1936.

The plaintiff contends that it was while the defendant contends to the contrary.

Whether or not it was in force on such date, depends, among other things, (1) upon the effective date of the policy and the consequent anniversary date for the payment of annual premiums thereon—whether such effective date was the date set forth in the policy and the date of the approval of the application therefor or was the date of the delivery of the policy to the insured—; (2) upon whether the first premium paid purchased term insurance from the effective date of the policy for the period mentioned in the policy or whether it purchased insurance from the effective date of the policy to the end of a year from such date, regardless of the period indicated in the policy; (3) upon whether the anniversary date for the payment of premiums, subsequent to the first year, was January 3 of each year as stated in the policy or whether such date was the date upon which one year's insurance from the date of the delivery of the policy expired; (4) upon the value of the policy together with the value of the remaining matured coupon attached thereto, with interest for extended insurance from the due date of the unpaid premium; and (5) upon the due date of the unpaid premium upon which the extended insurance became effective and the period covered by such extended insurance.

As to all of the matters to which reference has been above made, the parties are in perfect disagreement. They do not agree upon the effective date of the policy or the length of time for which the first premium purchased insurance or upon the anniversary date of said policy for the payment of annual premiums or upon the value of the policy and the remaining matured coupon attached for extended term insurance or the date upon which such extended insurance began or the date of its expiration or whether it expired before or after the death of the insured.

The plaintiff, in general, contends that the insurance under the

policy became effective on January 8, 1930, upon the delivery of the policy to the insured, and not at any earlier date; that the first premium was for a full year's insurance from that date, which expired on January 8, 1931; and that January 8 of each year became the anniversary date for the payment of annual premiums thereon. She contends that the policy of insurance was one for ordinary insurance upon fixed, annual premiums to be paid therefor and was not for term insurance for the first year and that, for each premium paid, including the first, the insured was entitled to a full year's insurance from the delivery of the policy, regardless of the statement in the policy that the first year's premium was for insurance for a period expiring January 3, 1931, and that it was in force on March 15, 1936, at the date of the death of the insured.

The defendant contends to the contrary and that the policy became effective on January 3, 1930, the date upon which it was issued and the application therefor was approved, basing its contention in the main upon the plain and unambiguous provisions of the policy as claimed by it and upon the practical construction of the parties given such provisions. It contends that the policy for the first year was for term insurance expiring on January 3, 1931, as provided by the terms of the policy, and that the first premium paid purchased insurance to that date and that January 3 each year thereafter became the anniversary date for the payment of subsequent yearly premiums thereon and that all insurance thereunder had expired previous to March 15, 1936, at the date of the insured's death.

The first premium appears to have been paid on December 27, 1929, at the time that the application for the policy was made, conditioned on the return of the same unless the application was approved and the policy issued thereon.

In the application at a place provided therein for the date the insured desired the policy to bear, no specific date was given; nor was it directed to bear the date of the approval of such application by the defendant or otherwise; but, to the contrary, the terms "OLCO" appeared thereon in such place, which terms in insurance terminology, as applied to policies such as the one in question, could have had reference only to the character of the policy desired, meaning an ordinary life coupon option policy and not any reference to the date thereof. The defendant, upon receiving the application, granted the character of the policy desired but erased the letters "OLCO" where they appeared and inserted in their place the words, "Date of Approval" and indicated such change in Section 14 of the application.

This, the insured had authorized it to do, under the provisions of Section 15 of the application.

It is contended by the plaintiff that such was a material alteration

such as was required to be resubmitted to the insured for his approval and acceptance before the policy could take effect and that it was not submitted to and accepted by him until January 8, 1930, upon the delivery of the policy; that the policy did not go into effect until delivery; and that there was no contract of insurance prior to that date in that there was no meeting of the minds of the insured and the defendant upon such matter. She cites in support thereof the following cases: State ex rel. Equitable Life Assurance Society of U. S. v. Robertson (Mo.), 191 S. W. 989; Zielinski v. General American Life Ins. Co. (Mo. App.), 96 S. W. (2d) 1059; Rowland v. Missouri State Life Ins. Co. (Mo. App.), 48 S. W. (2d) 31.

The defendant insists that the change was immaterial for the reason that it was in accordance with the further provisions of the original application in which an agreement made by the insured was set forth as follows: ''I also agree that the insurance hereby applied for shall not take effect until the payment of the first premium or instalment thereof and the approval of this application by the Company;'' that the first premium had been paid at the time that the application was made and a statement to such effect appeared in the application; that, by Section 15 of the application, it was authorized to correct any error therein and supply any omission therefrom and set out such change in Section 14 of the application; that it had only supplied an omission therefrom; and that it was unnecessary to resubmit the same as corrected to the insured for his approval, inasmuch as the insured, by Section 15 aforesaid, further agreed that his acceptance of any policy issued by the defendant as a result of the application which contained the photographic copy of such application should constitute a ratification of any changes in said application.

The provisions of Section 15 of the application, so far as material here, are as follows:

''I agree (a) that I will present myself promptly to an authorized examiner of the Company for examination, if required, and hereby relieve the Company of any responsibility for securing such examination;—(d) that in case the Company should issue a policy different from that applied for herein or in case of apparent errors or omissions in this application the Company is hereby authorized to amend it, by recording the change in Section 14, above and that my acceptance of any policy issued as a result of and containing a photographic copy of this application shall constitute a ratification by me of said application so changed or amended.''

The defendant contends that it set out the changes made in Section 7 of the original application in Section 14 of the application, as provided by Section 15 thereof; that the original application as made with the changes indicated therein was in pursuance of the authority

given it by the insured and such changes so made by it, to the effect that the insurance became effective upon the approval of the application by the defendant, were, upon the acceptance of the policy by the insured, ratified by the insured; and that, by reason of all which, the effective date of the insurance under the policy was January 3, 1930, the date of the approval of the application as provided in said application and in the policy.

While the words "Date of Approval," inserted in Section 7 of the application, may have been material, yet their insertion by the defendant at such point appears to have been authorized by the insured inasmuch as, by this insertion, the defendant was merely supplying an omission from the application which, it appears, was fairly within the contemplation of the parties, under the provisions of the application. The letters "OLCO," appearing in Section 7 of the original application at the place therein provided for the date the insured desired the policy to begin, were clearly meaningless in such connection. To strike them out and insert in their stead the date, shown to be in contemplation, upon which the insurance should take effect was not an unauthorized alteration in view of the provisions of the application and was not such as would ordinarily, under the circumstances, have been required to be resubmitted to the insured for his approval, except for the statement in the application that his acceptance of the policy with such changes in the application would constitute a ratification by the insured of such application as amended, from which it appears to have been within the contemplation of the parties that such changes were to be resubmitted to the insured for his approval upon the delivery of the policy to him.

There is abundant authority to the effect that (except in cases where the policy is one for term insurance) the anniversary date of the policy for the payment of premiums thereon dates from the date when the policy goes into effect and not from the date of the approval of the application, where the contract is not complete upon its approval and issuance but something remains to be done to complete it—such as delivery. [Halsey v. American Central Life Ins. Co., 258 Mo. 659, 167 S. W. 951, and cases cited in the plaintiff's brief following it.]

In this case, it could not go into effect until delivered, which was the time fixed for the submission to the insured of the changes in the application and for his ratification thereof.

Such being the case, the policy in this case did not go into effect as a contract until January 8, 1930. The defendant insists, however, that, although the policy did not go into effect until such date, yet, upon going into effect by delivery upon such date, the insurance thereunder took effect as of date January 3, 1930, according to the terms thereof and according to the terms of the original application therefor and changes therein made, which changes were ratified by

the insured by the acceptance of the policy. We agree with the contention thus made by the defendant.

The insurance is not necessarily restricted to go into effect upon the date of the delivery of the policy; but, where the policy so provides, the insurance granted may become effective upon some other date and upon a date previous to the delivery of the policy. [Prange v. International Life Ins. Co., of St. Louis, 329 Mo. 651, 46 S. W. (2d) 523.]

In the Prange Case, *supra,* it was affirmatively provided, 1. c. 524 of 46 S. W. (2d): "After delivery of this policy to the Insured, it takes effect as of the fourth day of April, 1922." The date of the application for the policy in that case was April 28, 1922, while the policy itself bore the date of May 16, 1922, and was delivered on May 18, 1922.

Although the policy in this case did not in itself become effective as a contract until its delivery on January 8, 1930, yet the insurance granted thereby, when it did go into effect, reached back and covered a period from the date of the approval of the application and the issuance of the policy (which was January 3, 1930) to January 3, 1931; and it is clear that January 3 each year thereafter became the anniversary date for the payment of subsequent annual premiums thereon. Not only so, but the clear provisions of the policy show that the insurance took effect on January 3, 1930, and that the anniversary date for the payment of annual premiums thereon was the third day of January each year thereafter; and the evidence clearly shows that the parties alike understood that such date was the anniversary date for the payment of such premiums and mutually acted upon such understanding.

It is a well established rule of law that the construction placed upon a contract by the parties as evidenced by their acts, conduct, or declarations indicating a mutual intent and understanding will be adopted by the courts where the effect thereof is not to alter the meaning of a contract that is otherwise plain and unambiguous. [Scotten v. Metropolitan Life Ins. Co., 336 Mo. 724, 81 S. W. (2d) 313; Porterfield v. American Surety Co. of N. Y., 201 Mo. App. 8, 210 S. W. 119; State v. Christopher, 318 Mo. 225, 2 S. W. (2d) 621.]

It is insisted also by the defendant that the first premium paid (which accompanied the application) was for term insurance, which ended January 3, 1931, and that the provision therefor was valid and binding on the parties; and it cites the case of Prange v. International Life Ins. Co., of St. Louis, *supra,* and other authorities in harmony therewith. It further insists that, by reason of the insurance being term insurance expiring January 3, 1931, January 3 of each year from that date became the anniversary date for the payment of premiums.

The Prange Case is authority for the proposition that, where the

contract is, in plain and unambiguous language, one for term insurance or for insurance ceasing at a certain time, it must be given effect as such and that the courts are powerless to give it any other effect; that such a contract must be construed according to its plain terms; and that, where the policy recites that the premium thereon paid for the first year is for the term insurance expiring at a certain date, it can not be treated as an annual premium entitling the insured to one year's full insurance, taking it out of the rule announced in Halsey v. American Central Life Insurance Company, *supra,* relied upon by the plaintiff, to the effect that, where from the entire contract it appears that the parties intended the deceased to be insured for one full year for the premium paid, a full year's insurance must be given.

This case and the Prange Case are not, however, upon the facts, like two black-eyed peas; but we think that this case is to be governed by the same rules of law announced in the Prange Case. In the Prange Case, the policy in plain language recited that the first premium constituted payment of premium for term insurance, ceasing on a certain date, from which it could be renewed as an ordinary life policy by the payment of a like sum on that date and on each succeeding anniversary date. It was by reason of such plain and unambiguous language that the court said that the premium in that case could not be construed as a premium for annual insurance or as other than for term insurance, regardless of the rule announced in the Halsey Case that, for each yearly premium paid, the insured is entitled to a full year's insurance. It is true that there were other points of difference between the Halsey Case and the Prange Case; but the chief point of difference rested upon the plain and unambiguous language in the Prange Case, which was not found in the Halsey Case.

In the case at bar, the consideration for the insurance recited in the policy is as follows:

"The Consideration for this policy shall be the application therefor and a premium of Eighty-six and 84/100 Dollars for the period terminating January Third, 1931, and a premium of like amount payable on said date and annually thereafter during the continuance of this policy. Each of the premiums may be paid in one sum or in semi-annual or quarterly instalments of the amount . . ."

The difference between the recital in this case and in the Prange Case is apparent.

If, however, in this case, the recital is sufficiently plain and unambiguous to show that term insurance expiring January 3, 1931, only was purchased by the first premium paid of $86.84, then it is equally binding upon the court to give it effect as in the Prange Case, notwithstanding such premium is the same as the yearly premiums thereafter required. It is said in the Prange Case that the

amounts which may be charged for life insurance by way of premiums or otherwise are not fixed or limited by law. This is true, although the premiums for term insurance are ordinarily less than the premiums for ordinary life insurance, which is ordinarily one of the distinguishing features between the two classes of insurance.

The recital in this case is that, in consideration of a premium of $86.84 for a period terminating January 3, 1931, and a premium of like amount on January 3 annually thereafter, the insurance was granted. The first premium was clearly for insurance for a term expiring January 3, 1931, with the privilege in the insured of renewing the insurance for another year by the payment of a like amount on that date and from year to year thereafter by the payment of like amounts each year on January 3 of each year. While not worded just as in the Prange Case and, perhaps, not just as emphatically, the intention to be gathered therefrom is just as clear and plain. Not only so, but the policy provides in another section thereof that the first year's insurance is term insurance, purchased by the whole or part of the premium paid for the first year.

The same rule must be applied in this case as in the Prange Case. The first premium purchased term insurance, which expired January 3, 1931, which date became the anniversary date for the payment of the premiums thereafter, regardless of the date upon which the policy was delivered and regardless of the rule announced in the Halsey Case that, for each yearly premium paid, an insured is entitled to one full year's insurance from the delivery of the policy. The plain and unambiguous terms of the policy in this case preclude the rule in the Halsey Case and other cases following it, relied upon by the plaintiff.

It is true that in the Prange Case an affirmative provision is found to the effect that, after the delivery of the policy, it should take effect as of a certain date, which does not in express terms appear in this case. In the Prange Case and in the Halsey Case, both the facts and the policy provisions were different. True also in this case, the facts and the policy provisions are different from the facts and the policy provisions in the Halsey Case, so that the Halsey Case and companion cases therewith have no application to the issues in this case. In the Halsey Case, the policy was dated May 31, 1906, but was not delivered until June 5 of that year. The policy in that case was by its express terms not to become effective until it had been delivered and the first annual premium had been paid, which was not done until June 5, 1906. The court held that, for the premium paid, the insured was entitled to a full year's insurance from that date. There is no such provision found in this case. A similar provision was found in the Prange Case; but the further provision, above referred to, was found therein to the effect that, after its delivery, it should take effect as of a certain date prior to its delivery. More-

over, in this case, aside from the date fixed by the terms of the policy and the application for the termination of the insurance for the first premium paid (to wit, January 3, 1931) and the consequent anniversary date for the payment of premiums thereafter, there was no condition set forth as to the time the insurance should go into effect, other than that it would not go into effect until the first premium was paid and the application for the insurance was approved. The first premium was paid on December 27, 1929, upon the making of the application; and the application was approved January 3, 1930, so that there was nothing to prevent the insurance taking effect on that date, as specified, on the delivery of the policy, although the policy was not delivered and did not become effective as a contract until later, on January 8, 1930.

The conclusion having been reached that the insurance under the policy was effective for a period beginning January 3, 1930, the conclusion follows that the anniversary date for the payment of the annual premiums thereafter was January 3 each year; and it follows that, upon default in the payment of the premium thereon for the fourth year, which fell due on January 3, 1933, the insured was entitled, at his election, to extended insurance beginning with such date for such term thereafter as the combined value of the policy and the matured coupon attached would purchase. The defendant granted such extended insurance from that date, based upon its theory of the combined value of the policy and the coupon, for a period of three years and sixty-six days or until March 10, 1936, at which time it expired, which was five days prior to the death of the insured, which occurred on March 15, 1936, which theory we hereinafter find is the correct theory.

The insurance thus granted is based on the values shown in Column 3 of the Table of Loan and Surrender Values set out in the policy, increased by the value of the matured and unused coupon remaining attached to the policy. Such values are based on the American Experience Table of Mortality, with interest at the rate of three and one-half per cent. per annum, and are equal to the reserve less the surrender charge, not in excess of two and one-half per cent. of the amount of insurance under the policy. The table referred to shows that, at the end of the third year or upon the due date of the premium for the fourth year, the policy had a value for extended term insurance for that date, without taking into consideration the matured coupon attached, sufficient to provide such insurance for a term of two years and one hundred and seventy-nine days from that date. It appears from actuarial and mortality tables in evidence that the value for two years and one hundred and seventy-nine days extended insurance set out in the table at the insured's age of fifty-one years on January 3, 1933, was $70.46 and that the value of the matured coupon remaining attached at that date was $19.76, being the prin-

cipal amount thereof and four per cent. interest thereon for one year from the date of its maturity. It had matured January 3, 1932. The combined value of the policy and the coupon was $90.22 at that date, a value sufficient to carry extended insurance from that date for three years and sixty-six days or to March 10, 1936. The insured died March 15, 1936.

The plaintiff contends that the table of values set out in the policy does not afford the correct basis for the values of the policy to be applied for extended insurance but that the insured was entitled to the reserve value of the policy for extended insurance less the surrender charge thereon, which was its cash value and amounted to $72.00, or $1.54 more than the table value in the policy for extended insurance, without including the value of the matured coupon attached; that, if such value had been applied, it would have provided extended insurance for a greater term than that provided by the table value; that, upon the basis of such reserve or cash value together with the value of the matured coupon attached, the combined value for the purchase of extended insurance was $91.76, which, if it had been applied, would have provided extended insurance to March 29, 1936, fourteen days later than the death of the insured.

The reserve value of the policy at the end of the third year, exclusive of coupons, from the actuarial testimony and other evidence in the record, was $88.16, the minimum of which, according to the policy provisions, to be used in the purchase of extended insurance was $38.16, which minimum value was arrived at by deducting a surrender charge of two and one-half per cent. on $2,000, the amount of insurance, amounting to $50. The part of the reserve actually used, however, under the policy, to provide extended insurance, based upon the table value set out in the policy, exclusive of the matured coupon value, was $70.46, which was the net value of such insurance at the insured's age of fifty-one years, based on the American Experience Table of Mortality, at three and one-half per cent.

The value of the policy for cash surrender at the end of the third year under the table set out therein was $72. Under Section 5741, Revised Statutes of 1929, it is required that three-fourths of the reserve value be made available for extended insurance. It follows, under the provisions of such statute, that, of the reserve value of the policy in question here of $88.16 without coupons, $66.12 or three-fourths thereof was required to be available for extended insurance. However, it appears that, by the policy provisions, $70.46 was actually made available and applied for the extended insurance granted under the policy.

The value to be ascertained under the statutory rule provided by Section 5741, supra, for the computation of reserve values, must be held to be the minimum value permitted. [Gooch v. Metropolitan Life Ins. Co., 333 Mo. 191, 61 S. W. (2d) 704.]

It thus appears that the value for extended insurance provided by the policy is in excess of that required by the statute. Where such is the case, the rule provided in the policy must be substituted for that provided by the statute. There is nothing to prevent an insurance company from providing a rule more favorable to the insured than the statutory. [Gooch v. Metropolitan Life Ins. Co., *supra.*]

Moreover, the record in this case shows that the insured, after having full notice from the defendant of the extended insurance granted and the date upon which it expired, made no protest or objection thereto or demand for extended insurance expiring on any other or different date during his lifetime, or for insurance differently based. He lived some three years and over after the granting of the extended insurance by the defendant under the policy (to March 10, 1936) was made known to him.

The extended insurance granted by the defendant, based on the policy provisions, was clearly within the statutory requirements, from which it follows that the contentions of the plaintiff must be denied.

It is insisted that the statute mentioned is a part of the policy provisions and must be so considered. Such may be conceded as true. The policy provisions, if they conflict with the statutory provisions, must give way to the statutory provisions. However, that such is true does not, upon the facts in this case, change the result from that above stated.

The plaintiff contends further that, in determining the extended insurance granted, the defendant wrongfully added to the value of the policy for extended insurance the value of the matured coupon attached on January 3, 1933, at the time from which the extended insurance was granted. January 3, 1933, was the due date of the payment of the annual premium, on the payment of which default was made by the insured. She contends that said coupon should have been left outstanding until the term for which the policy value for extended insurance expired and its value at that time then ascertained and applied for extended insurance. There is no provision in the policy or in the statute for extended insurance by piecemeal. Both the policy and the statute provide for extended insurance from the due date of the unpaid premium, and such insurance is based upon the combined value of the policy and the matured attached coupon thereto at that time. The plaintiff's contention is, accordingly, denied.

The plaintiff further contends that there is a discrimination in the policy contrary to the statute, in that it makes a difference between an insured who takes the cash value of a policy upon its surrender and one who elects to take extended insurance, in that the cash value provided is greater than the value provided for extended insurance. The record clearly shows the reason for such difference. Where the cash value is accepted and the policy is surrendered, the entire con-

tract is terminated; and no further expense is connected therewith. In the case extended insurance is taken, the expense of maintaining records is entailed until the term expires; and, where death occurs within the life of the extended insurance, the claim must be handled, which involves expense. The slight difference in the two values is, therefore, entirely justified by the matter of the expense involved in connection with the extended insurance. We are, therefore, unable to find any substantial ground for the claim of discrimination advanced by the plaintiff.

All of the defendant's contentions are sustained, and the plaintiff's are denied. The judgment of the trial court is reversed. All concur.

## On Motion For Rehearing.

REYNOLDS, J.—The plaintiff's motion for rehearing consists mostly of criticism of the court's opinion as erroneous in its holdings adverse to her contention upon issues raised, presented, argued, and submitted in the briefs and of the claim that such opinion conflicts with sundry opinions of both the Supreme Court and the other appellate courts of the State (including opinions of this court) and with Section 5729, Revised Statutes of 1929.

Rule 20 of this court provides that motions for rehearing must be accompanied by a brief statement of the reasons for a reconsideration and must be founded on papers showing clearly that some question decisive of the case and duly presented by counsel in their briefs has been overlooked by the court or that the decision is in conflict with an express statute or a controlling decision to which the attention of the court was not called.

The motion does not direct our attention to any matter presented in her brief that was overlooked by the court in its opinion. The mere fact that such matters were not determined in accordance with the plaintiff's contentions but were determined adversely to her contentions does not mean that they were overlooked, even though not specifically mentioned. The motion, for the most part, is but a mere repetition of the plaintiff's previous arguments in her brief.

The opinions of the Supreme Court with which our opinion is alleged to be in conflict—to-wit, the cases of Heald v. Aetna Life Insurance Company of Hartford, Conn. (Mo.), 104 S. W. (2d) 379; Henderson v. Massachusetts Bonding & Insurance Company, 337 Mo. 1, 84 S. W. (2d) 922; Prange v. International Life Insurance Company of St. Louis, 329 Mo. 651, 46 S. W. (2d) 523; Scotten v. Metropolitan Life Insurance Company, 336 Mo. 724, 81 S. W. (2d) 313; Halsey v. American Central Life Insurance Company, 258 Mo. 659, 167 S. W. 951; Gooch v. Metropolitan Life Insurance Company, 333 Mo. 191, 61 S. W. (2d) 704—and Section 5729, Revised Statutes of 1929, were called to our attention in the briefs. We are unable to

find wherein our opinion may be said to conflict with the opinions in any of such cases or with the statute mentioned. The Supreme Court in those cases based its decisions upon the facts before it, as did this court in its opinion in this case; and we endeavored to apply the principles enunciated in those cases so far as we could do so under the facts in this case. Neither do we find wherein there is any conflict between our opinion and the other opinions of the various courts of appeals cited. They were determined in each instance upon the particular facts involved, just as we have determined this case. We have not conflicted with any of them.

The motion directs attention to the case of Dobson v. American Central Life Insurance Company, 112 S. W. (2d) 148, decided by this court, and complains that the opinion herein does not follow the opinion in that case in holding that, in the policy in question, the insurance for which the first premium paid was term insurance for the year which it covered. So far as that is concerned, we are not bound to follow it; however, there are distinguishing facts in both cases. In holding that the first premium was clearly for insurance for a term expiring January 3, 1931, and that such date became the anniversary date for the payment of the premiums thereafter, we took into consideration all the provisions of the policy and the application therefor, including the recital in the policy in question that the insurance was granted in consideration of a premium of $86.84 for a period terminating January 3, 1931, and a premium of like amount on January 3 annually thereafter, and the provision found in the policy that the first year's insurance is term insurance, purchased by the whole or part of the premiums paid for the first year. It will be noticed that in the Dobson Case no reference is made to any provision in the policy in that case such as the provision in this case—that the first year's insurance is term insurance. The court in that opinion did not have under consideration any such provision. The opinion in this case holding that the first year's insurance is term insurance purchased by the whole or part of the premium paid for the first year is but giving effect to the agreement of the parties that it should be term insurance. In such respect, it is in direct line with the Prange Case and other cases in harmony therewith. The opinion in this case is therefore to be distinguished from the opinion in the Dobson Case.

There is likewise no merit in the plaintiff's contention that the Dobson Case and this case are not in harmony with reference to the maturity and the availability of the coupons attached to the policies for the purposes of extended insurance. The Dobson Case was disposed of on a stipulation of facts introduced in evidence in that case; and likewise this case was tried below largely on a stipulation of facts introduced therein, entirely different. In the Dobson Case, one of the main contentions related to the time of the maturity of a cou-

pon attached to the policy and its availability for application for extended insurance. In this case, there is no dispute as to the coupons, the maturity thereof, or their availability; but it is stipulated that attached to the policy in question were certain coupons in the sum of $19 each, one of which was to become due each year after the policy had been in force for one year and after the premium for the following year had been paid and that three annual premiums had been paid on the policy and two of the coupons had matured. One (namely, No. 1) had matured January 3, 1931, and had been surrendered to the company; and the insured received the benefit thereof. The other coupon (namely, No. 2) matured January 3, 1932, and remained attached to the policy and was available for extended insurance.

The determination of the maturity of the coupon involved in the Dobson Case 'and its availability for extended insurance was the keystone of that case, upon which the opinion rested. The holding in that case that, from the recital in the policy, the insurance granted for the first year and paid for by the first premium was not term insurance was not necessary to the decision in that case. The question in that case and the one upon which it was disposed of related to the maturity of the coupon and its availability for extended insurance. We are not confronted with any such proposition in this case. The two cases are therefore to be distinguished upon that further ground.

The motion for rehearing raises the further question that the opinion in this case, in reversing the judgment of the trial court without remanding the cause, is in conflict with the cases of State ex rel. [Ward v. Trimble, 327 Mo. 773, 39 S. W. (2d) 372, l. c. 373, and Byrne v. Prudential Insurance Company of America (Mo.), 88 S. W. (2d) 344, l. c. 347.]

No question of remand was raised by the plaintiff in her brief upon the original submission of this case. She was not appealing and was not seeking a remand. Besides, the case was tried in the lower court upon the agreed facts submitted, and it was disposed of in the opinion upon the theory that such agreed facts were the facts in this case. We were therefore not called upon to remand the case.

The motion for rehearing is overruled. All concur.